In re Charles N. MIDKIFF and Karen P. Midkiff, Debtor(s).

PIONEER GENERAL INSURANCE COMPANY, Plaintiff(s),

v.

Charles N. MIDKIFF and Karen P. Midkiff, Defendant(s).

Bankruptcy No. 87 B 04337 J.
Adv. No. 87 J 489.

United States Bankruptcy Court,
D. Colorado.

May 3, 1988.

Charles N. Midkiff, pro se.

Victoria M. Bunsen, Denver, Colo., for plaintiff.

## ORDER

ROLAND J. BRUMBAUGH,
Bankruptcy Judge.

THIS MATTER comes before the Court upon a Complaint to Determine Dischargeability filed by Pioneer General Insurance Company alleging that the debt it is owed is non-dischargeable pursuant to 11 U.S.C. § 523(a)(7) and 11 U.S.C. § 523(a)(4). This matter constitutes a core proceeding under 28 U.S.C. § 157 and this Court recognizes jurisdiction pursuant to 28 U.S.C. § 1334. Trial was held on the Complaint on April 13, 1988.

The following facts were undisputed. The Defendant/Debtor ("Midkiff") was a professional bail bondsman licensed in the State of Colorado and working as an agent for Continental Surety and Financing Company ("CSF"). The state licensing requirements provide that a qualification bond must be delivered by every bondsman in the sum of $50,000 to protect the state against forfeitures on any bonds written. Midkiff's qualification bond is dated October 1, 1982 wherein he promises, as principal, and CSF promises, as surety, to make full and prompt payment of any bail bond issued by Midkiff that is forfeited. Midkiff also entered into an Agency contract with CSF in which he promises to pay all expenses of the agency including those arising out of bonds written by him.

Subsequent to that date, Midkiff was licensed and began writing bonds underwritten by CSF in certain authorized amounts from 1982 through 1985.

In March 1985, pursuant to a Reinsurance Agreement, Pioneer General Insurance Company ("Pioneer") assumed the rights and obligations of CSF. Also in 1985, the defendant was terminated and his qualification bond revoked by Pioneer/CSF because of the outstanding forfeitures that Midkiff was not repaying. Upon the revo-

cation of the qualification bond, Midkiff's license was revoked by the State of Colorado.

Many of the forfeitures were reduced to judgment jointly against the particular named defendant and Midkiff as surety. Because Midkiff had failed to take collateral on those bonds, the outstanding balances were eventually paid by Pioneer.

On April 16, 1987, Midkiff filed a Petition under Chapter 7 of the U.S. Bankruptcy Code. He listed among his creditors Pioneer. Pioneer filed a complaint to determine dischargeability of that debt. Pioneer alleges that because the debt owed by Midkiff is a forfeiture of a bond written to the State of Colorado, the debt should be found non-dischargeable pursuant to 11 U.S.C. § 523(a)(7) and that Pioneer should be subrogated to that claim of the State pursuant to 11 U.S.C. § 509. Pioneer further alleges that dischargeability should be denied on the basis of the breach of the fiduciary relationship between Midkiff and Pioneer pursuant to 11 U.S.C. § 523(a)(4) stating that Midkiff breached his fiduciary duty to Pioneer in failing to protect Pioneer from unreasonable risk and failing to comply with the terms of the contracts he executed.

I. *Dischargeability Pursuant to 11 U.S.C. § 523(a)(7).*

11 U.S.C. § 523(a)(7) provides that an individual debtor is not discharged from any debt:

"(7) to the extent such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss...."

Judge Matheson of this Court has recently held that in this situation § 523(a)(7) does not apply. *Pioneer General Insurance Company v. Paige,* unpub. Case No. 87 E 194, April 15, 1988 [available on WESTLAW, 1988 WL 62500]. I concur with Judge Matheson and incorporate the *Paige* case by reference and attach it hereto as Appendix "A".

II. *Dischargeability Pursuant to 11 U.S. C. § 523(a)(4).*

Next, we will address Pioneer's contention that Midkiff breached his fiduciary duty to Pioneer in his handling of bail bonds. We must address this issue to make a determination on Pioneer's request for attorney's fees. State law allows the recovery of attorney's fees if there is a contract which provides for such fees to be paid. The agency contract executed by Midkiff and Pioneer contained such a provision. However, in order to award attorney's fees, it would be necessary for this court to find merit in Pioneer's claim of breach of fiduciary duty and we decline to do so. The meaning of fiduciary under federal laws is much stricter than the general common law definition of a fiduciary as a relationship involving confidence, trust and good faith. *In re Cairone*, 12 B.R. 60, 62 (Bankr. D.R.I.1981). Federal law limits its application to express or technical trusts, and debts alleged to be non-dischargeable must arise from breach of trust obligations imposed by law, separate and distinct from any breach of contract. *In re Currin*, 55 B.R. 928 (Bankr.D.Colo.1985), *In re Johnson*, 691 F.2d 249 (6th Cir.1982). Although Pioneer alleged that such an express trust existed between Midkiff and Pioneer, it failed to produce any proof that would support that contention. The failure to reimburse Pioneer for forfeitures, the failure to maintain an adequate reserve account and the failure to follow Pioneer's underwriting policies were breaches of their contractual relationship. Pioneer failed to establish that an express or statutory trust existed between Midkiff and Pioneer adequate to find a fiduciary relationship between the parties. It is, therefore,

ORDERED that judgment of dismissal shall enter in favor of the Defendants and against the Plaintiff, each party to bear its own costs.

APPENDIX A

IN THE UNITED STATES
BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

In re:

DAVID BURNHAM PAIGE and
DONNA MARIE PAIGE,
Debtor(s).

PIONEER GENERAL INSURANCE
COMPANY, Plaintiff,

vs.

DAVID BURNHAM PAIGE, dba Dave's
Bail Bonds, Defendant.

Case No. 86 B 8072 C

Adversary No. 87 E 194

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY PLAINTIFF, PIONEER GENERAL INSURANCE COMPANY, PURSUANT TO BANKRUPTCY RULE 7056 AND F.R.Civ.P. RULE 56

This matter comes before the Court on motion of the Plaintiff, Pioneer General Insurance Company's ("Pioneer"), for summary judgment. The undisputed facts that pertain to the issue now ripe for determination are as follows:

The Defendant, David Burnham Paige ("Paige"), was a professional bail bondsman. In that role he acted as surety for criminal defendants who were required to post a bond as a condition to remaining out of jail pending trial. Paige entered into a contract with Pioneer on March 15, 1985, which provided, *inter alia*, that Pioneer was a surety on all bonds written by Paige in connection with the latter's bail bond business, Dave's Bail Bonds. The contract further provided that Paige, as "Local Agent," would indemnify Pioneer for any and all liability incurred in connection with bond forfeitures, including any costs, damages, claims, suits, attorneys fees and expenses of whatever kind in connection with satisfying forfeitures and securing Pioneer's discharge from existing bail bonds.

Paige continued to act as agent for Pioneer and wrote bail bonds until the filing of his Chapter 7 bankruptcy on August 29, 1986. His authority to write bail bonds on behalf of Pioneer terminated upon the filing of his Chapter 7 petition pursuant to the terms of his contract and his assent thereto.

If a criminal defendant for whom Paige had "posted bond" failed to appear at the designated time, the bond amount would be forfeited to the court. It is undisputed that Pioneer has incurred obligations and made payments to various Colorado courts in connection with bail bond forfeitures resulting from Paige's bail bond business. Paige does dispute the actual amount of such forfeitures paid by Pioneer on behalf of the former. The Court here will only address the threshold issue of whether Paige's liability to Pioneer under the indemnity agreement for bail bond forfeitures paid by Pioneer is nondischargeable pursuant to Section 523(a)(7), where Paige served as a personal surety on such bail bonds and Pioneer further acted as a surety for Paige. The matter herein is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and the Court shall enter a final order, accordingly.

Pursuant to Section 727(b) of the Bankruptcy Code, a debtor filing Chapter 7 will be discharged from all debts that arose before the date of the filing of the petition and from any liability on a claim that is allowed under Section 502 except for those exceptions to discharge provided for under Section 523(a). The specific exception at issue herein provides in pertinent part:

§ 523(a). A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit and is not compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7).

Pioneer contends that pursuant to 11 U.S.C. § 509(a) it is subrogated to the rights of the pertinent Colorado courts to the extent that it has paid forfeitures unto such courts related to bonds written by Paige. Pioneer further maintains that un-der its rights of subrogation it is granted standing to bring the within action under Section 523(a)(7). Courts are split as to whether a subrogee has standing to bring such a suit. *See, In re Lueking, (Kentucky Central Insurance Co. v. Lueking)*, 58 B.R. 472 (Bankr.E.D.Tenn.1986) (insurance company which issued reclamation of land bond on behalf of debtor and in favor of Tennessee Department of Conservation was *not* a "governmental unit" and therefore could not maintain an adversary proceeding pursuant to Section 523(a)(7) seeking nondischargeability of a debt arising from a fine, penalty, or forfeiture payable to and benefit of a governmental unit). *See also, In re Revere Copper and Brass, Inc.*, 32 B.R. 725 (S.D.N.Y.1983); 2 Collier on Bankruptcy, ¶ 101.24 (15th Ed.1985). *But see, In re Caponigri*, 193 F. 291 (S.D. N.Y.1912) (recovery permitted by a surety against another surety on a recognizance for bail; such an action is essentially a recovery of a penalty for forfeiture which is not dischargeable under Section 57(j) of the Bankruptcy Act of July 1, 1898).

In view of the above cited split of authority, it is therefore arguable whether Pioneer has standing to bring this action. However, in view of the United States Supreme Court's decision in *Kelly v. Robinson*, 479 U.S. 36 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), this Court will presume Pioneer has standing as a subrogee pursuant to Section 509(a) and will therefore address the issue whether Pioneer's claim against Paige for indemnity for a forfeiture suffered by a surety such as Pioneer under a bail bond surety contract qualifies as a debt which is nondischargeable pursuant to Section 523(a)(7).

In discussing the dischargeability of criminal pecuniary sanctions or obligations, the *Kelly* Court noted that such obligations had historically been excepted from the discharge provisions of the Bankruptcy Act of 1898 ("Act") by the expedient of a rule of law which held that such obligations were not "debts" for the purposes of bankruptcy proceedings. The Court in *Kelly* further noted that:

In light of the established state of the law—that bankruptcy courts could not discharge criminal judgments—we have serious doubts whether Congress intended to make criminal penalties "debts" within the meaning of Section 101(4). But we need not address that question in this case, because we hold that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence. *Kelly v. Robinson,* 107 S.Ct. at 361.

In *Kelly,* the Supreme Court recognized that Congress, in adopting the Code, elected to codify in 11 U.S.C. § 523(a)(7) the historic rule that obligations for criminal fines, penalties and forfeitures would be excepted from an order of discharge in bankruptcy. In commenting upon Section 523(a)(7) within the scheme of the Bankruptcy Code, the *Kelly* Court stated, in pertinent part:

> On its face, it [Section 523(a)(7)] creates a broad exception for all *penal sanctions,* whether they be denominated fines, penalties or forfeitures. Congress included two qualifying phrases; the fines must be both "to and for the benefit of a governmental unit," and "not compensation for actual pecuniary loss." *Section 523(a)(7) protects traditional criminal fines;* it codifies the judicially created exception to discharge for fines. *Kelly v. Robinson,* 107 S.Ct. at 362 (emphasis supplied).

The Court in *Kelly* was concerned with the dischargeability of a state criminal restitution obligation. Even though the restitution obligation was arguably tailored to compensate the victim for a pecuniary loss, the *Kelly* Court described with some care the manner in which criminal restitution under the pertinent Connecticut statute was distinguishable from an ordinary civil debt. As the Supreme Court stated:

> Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the *penal goals* of the State and the situation of the defendant. *Kelly v. Robinson,* 107 S.Ct. at 362 (emphasis supplied).

In addressing the two qualifying phrases of Section 523(a)(7) (the fines must be both (a) "to and for the benefit of a governmental unit," and (b) "not compensation for actual pecuniary loss"), the *Kelly* Court described further how criminal restitution obligations differed from ordinary debts normally dischargeable in bankruptcy proceedings. As the Court stated:

> *Unlike* an obligation which arises out of a *contractual,* statutory or common law *duty,* here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an *offender by imposing a criminal sanction* intended for that purpose. *Kelly v. Robinson,* 107 S.Ct. at 362, *citing In re Pellegrino (Pellegrino v. Division of Criminal Justice),* 42 B.R. 129, 133 (Bankr.D.Conn.1984) (emphasis supplied).

A close reading of *Kelly* convinces this Court that the Supreme Court, in construing Section 523(a)(7), made it clear that the type of obligations which are excepted from discharge in bankruptcy proceedings by that section are those which are essentially *penal* in nature as to the particular debtor at issue, whether they be denominated fines, penalties or forfeitures. This reading is buttressed by the Supreme Court's lengthy commentary in the first half of the *Kelly* opinion which focused on the fact that criminal restitution arguably should not be seen as creating a "debt" or a debtor-creditor relationship between those parties imposing (the State) and becoming obligated under (a criminal defendant) the restitution judgment. In discussing the predecessor to Section 523(a)(7) (Section 57(j) of the Bankruptcy Act of 1898), the *Kelly* Court cited a leading case which had construed that earlier provision in stating, in pertinent part:

> It may suffice to say that nothing but a ruling from a higher court would convince me that congress, by any provi-

sions of the bankrupt act, intended to permit the discharge, under its operations, of any *judgment* rendered by a state or federal court *imposing a fine* in the enforcement of criminal laws.... The provisions of the *bankruptcy act have reference alone to civil liabilities,* as demands between debtor and creditors, as such, and not to punishment inflicted pro bono publico for crimes committed. *Kelly,* 107 S.Ct. at 359, *citing In re Moore,* 111 F. 145, 148–49 (W.D.Ky. 1901) (emphasis supplied).

See *United States v. Hawkins,* 20 F.2d 539 (S.D.Cal.1927) (in five consolidated cases, the court ruled that there was "no doubt" under Section 17 of the Act of 1898 that a surety on a bail bond was discharged of liability emanating from bail bond forfeitures).

In *People v. Rincon,* 603 P.2d 953 (Colo. App.1979), the Colorado Court of Appeals described the nature of a surety's obligation under a bail bond as follows:

Surety bonds are treated as other *contractual obligations,* subject to the rules generally applicable to contracts. *Rodriguez v. People,* 191 Colo. 540, 554 P.2d 291 (1976). Therefore, any event, including an action of the court, which materially changes the condition of the *contract,* terminates the obligation of the surety [to the extent the surety] is unaware of or refuses to consent to the change. *Rincon,* 603 P.2d at 954–55. *See, People v. Calloway,* 40 Colo.App. 543, 577 P.2d 1109 (1978); *People v. Smith,* 673 P.2d 1026 (Colo.App.1983).

In light of the *Kelly* Court's reading of Section 523(a)(7) and *People v. Rincon, supra,* this Court is satisfied that the particular debt at issue herein does not fall within the scope of that section. This case is distinguishable from the situation where a criminal defendant has been fined or otherwise imposed with a penalty or forfeiture that carries with it a badge of punishment. Were such a criminal defendant to file bankruptcy and a Section 523(a)(7) action brought against him regarding a bail bond forfeiture, that section would apply to except that debt from discharge. Such a

result would flow from the fact that the bail bond forfeiture would be imposed in that scenario upon the criminal defendant directly as a fine or forfeiture.

In the case at bar, Paige incurred the debt as a result of voluntarily assuming the role of a surety or guarantor by means of a contract. The criminal bail bond obligation was not imposed upon Paige but upon third party criminal defendants not before this Court. It cannot be said that Paige was being punished by virtue of incurring these obligations. Paige committed no criminal or penal act which gave rise to such debts. These bail bond forfeiture obligations, as to Paige, arose from a purely financial and contractual arrangement.

From the standpoint of a surety on a bail bond, the obligation assumed is certainly in the nature of a traditional civil debt. Although emanating from a criminal proceeding, such an obligation does not carry with it the characteristics or badges of a penal sanction which Section 523(a)(7) contemplates. Were this the case of the state bringing an action pursuant to Section 523(a)(7) directly against a debtor who was also the defendant in the underlying criminal action, the result would be quite different. In the latter context, the holding in *Kelly* would be apropos and Section 523(a)(7) would operate to bar the discharge of such an obligation.

Excepting from discharge the obligation of a bail bondsman or of an insurance company serving as a surety on such a bond would be contrary to the intent and purposes of Section 523(a)(7) as enacted by Congress and as interpreted by the Supreme Court in *Kelly.* To rule otherwise would, in effect, impose a penal sanction where one was never imposed in the first instance. Bail bond obligations incurred by a surety are therefore in the nature of a nonpenal civil debt traditionally dischargeable in bankruptcy. *See Kelly v. Robinson,* 107 S.Ct. at 359–63.

In view of the foregoing findings of fact and conclusions of law,

IT IS THEREFORE ORDERED that Pioneer's motion for summary judgment is denied; and

IT IS FURTHER ORDERED that judgment is entered on the pleadings dismissing Pioneer's action against Paige since it is the Court's ruling that any prepetition debts owed by Paige to Pioneer based upon bail bond forfeitures are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(7).

DATED: April 15, 1988

BY THE COURT:
/s/Charles E. Matheson
Charles E. Matheson,
Chief Judge