**In re Gi Yeong NAM, Debtor.**

**City of Philadelphia, Plaintiff,**

**v.**

**Gi Nam, Defendant.**

**Bankruptcy No. 99–16565DWS.**
**Adversary No. 99–0815.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 8, 1999.

Eric L. Frank, Philadelphia, PA, for Defendant/Debtor.

Steven m. Schain, Philadelphia, PA, for Plaintiff.

Marvin Krasny, Philadelphia, PA, Chapter 7 Trustee.

Dave P. Adams, Office of U.S. Trustee, Philadelphia, U.S. Trustee.

### MEMORANDUM OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the motion to dismiss ("Motion") of defendant, Gi Nam ("Debtor"), seeking to have the complaint ("Complaint") which the City of Philadelphia ("City") filed against him dismissed. According to the Complaint, Debtor agreed to act as a surety on a bail bond for his son, David H. Ham, in a criminal proceeding. When the son failed to appear for a court proceeding, a judgment ("Judgment") was entered against the Debtor on the bail bond.[1] In the Complaint, the City requests the Court to enter an order pursuant to 11 U.S.C. § 523(a)(7) that the Judgment is nondischargeable.

A hearing on the Motion was held on October 25, 1999. At the conclusion of the hearing, the matter was taken under advisement. After consideration and for the reasons set forth below, I grant the Motion and dismiss the Complaint.

## BACKGROUND

Debtor's son was charged with several criminal offenses in connection with a murder and robbery. Complaint ¶ 7. Pursuant to a Certification of Bail and Discharge ("Certification") signed on January 12, 1998, Debtor agreed to serve as surety for the $1,000,000 bail set as a condition for

---

1. As Debtor points out, while the City alleged in the Complaint that a copy of the Judgment was attached to the Complaint as Exhibit B, the document attached as Exhibit B is not a copy of the Judgment, but rather a "Notice of Entry of Judgment."

his son's release. *Id.* ¶ 8 & Complaint Exhibit A (copy of Certification). According to the Certification, the bond was conditioned upon, *inter alia*, Debtor "[a]ppear[ing] before the issuing authority and in the Courts of the County of Philadelphia, Pennsylvania, at all times as his presence may be required, ordered or directed ...." Certification at 2. The Certification included a provision authorizing the entry of a judgment by confession in favor of the Commonwealth of Pennsylvania and against the Debtor in the amount of the bond, with or without a default of the bond conditions.[2] Certification at p. 2.

On April 6, 1998, after the Debtor's son failed to appear for a pre-trial status listing regarding the aforementioned criminal charges, the Judgment for $1,000,018.50 [3] was entered against Debtor in the Court of Common Pleas Criminal Section.[4] Complaint ¶ 10. Notably, there is no allegation in the Complaint that the Judgment was entered against the Debtor because he was charged with or committed any criminal act. Rather, the Judgment was entered against him solely because he was the surety on the bail bond for his son.

On or about May 19, 1999, Debtor filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. *Id.* ¶ 11. In his Schedules, Debtor listed the Judgment as an "unsecured non-priority claim." *Id.* ¶ 12.

On August 27, 1999, the City commenced the instant adversary proceeding by filing the Complaint seeking to have the Judgment declared non-dischargeable under ¶ 523(a)(7). Approximately one month

later, on September 22, 1999, Debtor filed his Motion. On October 15, 1999, Debtor filed a memorandum of law in support of the Motion ("Debtor's Memorandum"). Thereafter, the City filed its response ("City's Memorandum") to the Motion.

**DISCUSSION**

**I.**

A motion to dismiss is the "proper means by which a defendant challenges the legal sufficiency of a complaint." *Sterling v. Southeastern Pennsylvania Transportation Authority,* 897 F.Supp. 893, 895 (E.D.Pa.1995). In ruling upon such a motion, the Court is required to accept as true all facts alleged by plaintiff in the complaint as well as any reasonable inferences that can be drawn from those facts after construing them in the light most favorable to the non-movant. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint is properly dismissed only if it "is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). *See also Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988) (dismissal is not appropriate unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief). It is the burden of the moving party to show the legal insufficiency of the claims asserted. *Aetna Casualty and Surety Company v. Deitrich,* 803 F.Supp. 1032, 1034 (M.D.Pa.1992) (*citing Johnsrud*

2. In a footnote in his memorandum, Debtor argues that since the confession of judgment provision in the Certification permits the entry of a judgment in favor of the Commonwealth of Pennsylvania and the Notice of Judgment refers to a judgment in favor of the Commonwealth of Pennsylvania, the Complaint is legally deficient since it does not set forth a basis for the City's claim (as opposed to the Commonwealth's claim) against the Debtor. In light of my ruling on Debtor's § 523(a)(7) argument, this additional argument is moot.

3. This amount included the $1,000,000 bond and $18.50 in court costs. Complaint Exhibit B (copy of Notice of Entry of Judgment on 4/6/98).

4. The caption of the notice lists the "Court of Common Pleas of Philadelphia Trial Division Criminal Section." The body of the notice refers to the criminal proceeding against the Debtor's son.

**152**

*v. Carter*, 620 F.2d 29, 33 (3d Cir.1980)). In considering Debtor's Motion, I apply this standard of review.

## II.

■ In seeking to have the Judgment declared nondischargeable, the City relies solely upon 11 U.S.C. § 523(a)(7). This provision states, in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... to the extent such debt is for a fine, penalty, or forfeiture payable to or for the benefit of a governmental unit, and is not compensation for actual pecuniary loss[.]

11 U.S.C. § 523(a)(7). The City contends that since a default under a bail bond is colloquially referred to as a "forfeiture," that under a literal reading of the statute, the Judgment fits within the category of debts excepted from discharge since the Judgment arose from a forfeiture, payable to and for the benefit of a governmental unit, *and is not compensation for actual pecuniary loss*. However, it is unclear that the "forfeiture" is intended to cover the type of situation at hand.[5] The terms "fine" and "penalty," as they are generally understood, suggest a debt arising out of a punishment. Viewed in the same light, the term "forfeiture" in § 523(a)(7) could be construed to refer solely to forfeitures imposed as punishment. Debtor advocates this construction of § 523(a)(7).

He asserts that § 523(a)(7) only applies to penal sanctions, whether they are labeled fines, penalties or forfeitures. Since he was not the defendant in the criminal proceeding in which the bail bond was issued and his obligation on the bail bond was contractual in nature, he reasons that the Judgment is not a penal sanction and does not fit within the scope of § 523(a)(7). As support this argument, Debtor cites *Commonwealth of Virginia v. Collins (In re Collins)*, 173 F.3d 924 (4th Cir.1999); *County of Berks v. Damore (In re Damore)*, 195 B.R. 40 (Bankr.E.D.Pa.1996); *Pioneer General Insurance Company v. Midkiff (In re Midkiff)*, 86 B.R. 239 (Bankr.D.Colo.1988); and *Pioneer General Insurance Company v. Paige (In re Paige)*, 1988 WL 62500 (Bankr.D.Colo. 1988). The courts in these cases held that a debt owed to the government by a surety on a forfeited bail bond, as opposed to a debt owed to the government by a criminal defendant on a bail bond for his failure to appear in court, is not included within the scope of § 523(a)(7) because such an obligation is not penal in nature. In so holding, these courts relied upon statements which the Supreme Court made in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), regarding § 523(a)(7).

In *Kelly*, the Supreme Court addressed the issue of whether § 523(a)(7) excepts from discharge restitution obligations imposed as conditions of probation in criminal proceedings. For guidance in interpreting § 523(a)(7), the Supreme Court looked not only to the language of the statute but also to the provision's object and policy which it concluded were revealed through "the history of bankruptcy

---

**5.** As defined in Black's Law Dictionary, "forfeiture" is:

> [a] comprehensive term which means a divestiture of specific property without compensation; it imposes a loss by the taking away of some preexisting valid right without compensation.... A deprivation or destruction of a right in consequence of nonperformance of some obligation or condition. Loss of some right or property as a penalty for some illegal act. Loss of property or money because of breach of a legal obligation (*i.e.*, default in payment).

> Forfeiture of property (including money, securities, and real estate) is one of the penalties provided for under certain federal and state criminal statutes (*e.g.*, RICO and Controlled Substances Acts). Such forfeiture provisions apply to property used in the commission of a crime under the particular statutes, as well as property acquired from the proceeds of a crime. *See e.g.*, 18 U.S.C.A. §§ 981, 982 (criminal and civil forfeiture), 21 U.S.C. § 853 (forfeiture in drug cases).

Black's Law Dictionary 650 (16th ed.) (citation omitted).

court deference to criminal judgments" and "the interests of the States in the unfettered administration of their criminal justice system." *Id.* at 43–44, 107 S.Ct. 353.

The Supreme Court explained that even though the provisions of the Bankruptcy Act of 1898 (the "1898 Act"), which predated the Bankruptcy Code, offered substantial support for the view that the Act discharged criminal penalties, courts refused to interpret the Act in that way and refused to allow a discharge in bankruptcy to affect judgments of state criminal courts, including restitution obligations. The Supreme Court opined that the reason for this judicially created exception for criminal sentences was the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Id.* at 47, 107 S.Ct. 353. On this point, the Supreme Court further stated: "This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Id.* at 49, 107 S.Ct. 353.

The Supreme Court reasoned that since Congress enacted ¶ 523(a)(7) of the Bankruptcy Code against the backdrop of this judicially created exception to discharge for criminal sentences and failed to express any intent to deviate from the exception, Congress intended the provision to preserve from discharge any condition which a state criminal court imposes as part of a criminal sentence. Elaborating on § 523(a)(7), the Supreme Court stated:

> On its face, [section 523(a)(7) ] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures.... Section 523(a)(7) protects traditional criminal fines; it codifies the judicially created exception to discharge for fines.

*Id.* at 51, 107 S.Ct. 353. Based on this analysis, the Supreme Court concluded that restitution obligations imposed as con-ditions of probation in criminal proceedings are nondischargeable under § 523(a)(7).

In the Fourth Circuit case cited by Debtor, namely *Collins, supra*, the debtor was a professional bail bondsman who owed approximately $37,000 to the Commonwealth of Virginia for forfeited bail bonds. 173 F.3d at 926. In concluding that bail bond obligations for sureties are not within the purview of § 523(a)(7) since they are not penal in nature, the Fourth Circuit relied upon the Supreme Court's statement in *Kelly* that § 523(a)(7) creates a "broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures." *Id.* at 931 (*quoting Kelly, supra*, 479 U.S. at 51, 107 S.Ct. 353). The Fourth Circuit also relied upon the statement in *Kelly* that " '[u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.' " 173 F.3d at 931 (*quoting Kelly, supra*, 479 U.S. at 52, 107 S.Ct. 353 (*quoting In re Pellegrino (Pellegrino v. Division of Criminal Justice)*, 42 B.R. 129, 133 (1984))). The Fourth Circuit further reasoned that interpreting § 523(a)(7) as only applying to penal sanctions "is consistent with the intent of the drafters of the Bankruptcy Code." 173 F.3d at 932. Quoting the drafters, the Fourth Circuit stated: "The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over extension." *Id.* (*quoting* H.R.Rep. No. 95–595, at 342 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6299).

The Fourth Circuit then turned to the issue of whether the debt for the forfeited bail bonds was penal or civil in nature. It concluded that under Virginia law, surety bonds posted by professional sureties are contractual obligations, subject to the gen-

eral rules of contract law. As such, the obligation was civil in nature.

The Fourth Circuit addressed two final points. The first point involved the notion that since § 523(a)(7) specifically refers to forfeitures, it should be construed as covering obligations stemming from bail bond obligations. Rejecting this theory, the Fourth Circuit stated:

> When the bondsman incurs liability for the full amount of bail upon his principal's failure to appear in criminal court, we refer to this colloquially as "forfeiting" the bond. It does not matter, however, that § 523(a)(7) includes the term "forfeiture" in its list of nondischargeable debts; this section, as we have said, excludes from bankruptcy discharge only debts that are essentially penal in nature. From the standpoint of the bondsman, the "forfeiture" of a bail bond is more akin to triggering liquidated damages for breach of his contract with the state than it is to triggering a penal sanction against him. Indeed, losses on bail bonds when criminal defendants abscond are an inevitable cost of doing business for the professional bondsman.

173 F.3d at 932. As this passage reveals, the Fourth Circuit rejected the view that because a surety's obligation under a defaulted bail bond is colloquially termed a "forfeiture," it is covered by § 523(a)(7).

Lastly, the Fourth Circuit responded to a concern raised by the Commonwealth of Virginia that "its bail system [would] be undermined if bondsmen [are allowed] to discharge their bond obligations in bankruptcy." *Id.* at 932. While expressing sensitivity to this concern, the Fourth Circuit dismissed it as unfounded, stating:

> Virginia law subjects bail bondsmen to heavy regulation. Before an applicant can be licensed as a professional bail bondsman, a local circuit judge must certify that he is suitable to engage in

that business. Thereafter, there are a number of steps the Commonwealth can take to ensure that a particular bondsman's bail bonds are adequately collateralized. . . . There is a mechanism for the Commonwealth to monitor the individual bondsman's obligations ... In short, there are sufficient safeguards available for the Commonwealth to ensure that its bail bondsmen are financially sound and that they provide adequate security to cover any default. We are therefore satisfied that our holding will not place Virginia's bail system in jeopardy.

*Id.* at 932–33 (citation omitted).

Two of the three bankruptcy cases cited by Debtor, namely *Midkiff, supra,* and *Paige, supra,* also involved professional bail bondsmen. *Damore, supra,* like the instant case did not.[6] This distinction was irrelevant to the *Damore* court's analysis. Indeed, the significant fact in all of the cases cited by Debtor is that the debtors were sureties on the bail bond which were forfeited and were not the criminal defendants for which the bail bonds were required as a condition of release. The situation in the instant case is the same.

In *Midkiff* and *Damore,* the courts relied, in reaching their decision, on the court's rationale in *Paige. See Damore, supra,* 195 B.R. at 42 ("We agree with the *Paige* court's analysis and conclude that, where, as in the case before us the debtor is not the defendant who failed to appear in the underlying state court criminal proceeding, but rather, is merely the surety on a forfeited bail bond who had no penal sanctions imposed against him, the debtor's obligation on the bail bond is contractual rather than penal in nature and is not rendered nondischargeable by Section 523(a)(7)."); *Midkiff, supra,* 86 B.R. at 240 (concurring with *Paige* case and incorporating it by reference into decision rather than independently analyzing the issue).

---

6. The Debtor in *Damore* signed two bail bonds as a surety for two separate criminal defendants. When the defendants failed to appear, the bonds were forfeited. 195 B.R. at 41.

Accordingly, I need only discuss the *Paige* decision.

In deciding whether § 523(a)(7) applies to bail bond forfeitures, the bankruptcy court in *Paige* reviewed in detail the Supreme Court's decision in *Kelly*. Based on its review of *Kelly*, the bankruptcy court stated:

A close reading of *Kelly* convinces this Court that the Supreme Court, in construing Section 523(a)(7), made it clear that the type of obligations which are excepted from discharge in bankruptcy proceedings by that section are those which are essentially penal in nature as to the particular debtor at issue, whether they be denominated fines, penalties or forfeitures.... In discussing the predecessor to Section 523(a)(7) (Section 57j of the Bankruptcy Act of 1898), the *Kelly* Court cited a leading case which had construed that earlier provision [ ] stating, in pertinent part ... ["]The provisions of the bankruptcy act have reference alone to civil liabilities, as demands between debtor and creditors, as such, and not to punishment inflicted pro bono publico for crimes committed." *Kelly*, 107 S.Ct. at 359, *citing In re Moore*, 111 F. 145, 148–49 (W.D.Ky.1901).

1988 WL 62500 at *3. Thus, the *Paige* court concluded that § 523(a)(7) excepts fines, penalties and forfeitures from discharge only if they were imposed as a punishment for a crime committed by the debtor. The *Paige* court found support for this conclusion in a sixty year old decision, namely *United States v. Hawkins*, 20 F.2d 539 (S.D.Cal.1927), wherein the district court held, in five consolidated cases, that it had "no doubt" that under § 17 of the 1898 Act, a surety on a bail bond was discharged of liability emanating from bail bond forfeitures.[7]

The *Paige* court then turned to the issue of whether, under Colorado law, a bail bond forfeiture obligation is penal or civil in nature. Citing a Colorado case, the bankruptcy court concluded that a surety's obligation under a bail bond is civil in nature because it is treated as a contractual obligation. Based on this conclusion and its reading of *Kelly*, the bankruptcy court ruled that the debtor's bail bond obligations were not within the scope of § 523(a)(7). In so ruling, the bankruptcy court made a concerted effort to distinguish the situation before it from "the situation where a criminal defendant has been fined or otherwise imposed with a penalty or forfeiture that carries with it a badge of punishment." It reasoned:

Were such a criminal defendant to file bankruptcy and a Section 523(a)(7) action brought against him regarding a bail bond forfeiture, that section would apply to except that debt from discharge. Such a result would flow from the fact that the bail bond forfeiture would be imposed in that scenario upon the criminal defendant directly as a fine or forfeiture.

In the case at bar, Paige incurred the debt as a result of voluntarily assuming the role of a surety or guarantor by means of a contract. The criminal bail bond obligation was not imposed upon Paige but upon third party criminal defendants not before this Court. It cannot be said that Paige was being punished by virtue of incurring these obligations. Paige committed no criminal or penal act which gave rise to such debts. These bail bond forfeiture obligations, as to Paige, arose from a purely financial and contractual arrangement.

From the standpoint of a surety on a bail bond, the obligation assumed is certainly in the nature of a traditional civil debt. Although emanating from a criminal proceeding, such an obligation does not carry with it the characteristics or

---

7. The court's decision in *United States v. Hawkins, supra,* consists of only two paragraphs. The court simply held that none of the four exceptions to discharge listed in § 17 of the Act covered the debt of a surety on a bail bond. It did not analyze whether the words "fine, penalty or forfeiture" cover a surety's obligation on a bail bond.

badges of a penal sanction which Section 523(a)(7) contemplates....[.]

Excepting from discharge the obligation of a bail bondsman or of an insurance company serving as a surety on such a bond would be contrary to the intent and purposes of Section 523(a)(7) as enacted by Congress and as interpreted by the Supreme Court in *Kelly*. To rule otherwise would, in effect, impose a penal sanction where one was never imposed in the first instance.

*1988 WL 62500 at \*4.*

■ The City contends that the cases cited by Debtor are distinguishable from the instant case because they involve civil as opposed to criminal judgments.[8] I find this point unpersuasive.[9] The significant fact in *Damore, Midkiff* and *Paige* was that the debts at issue arose from the debtors' obligations as sureties on bail bonds, not that their obligations were based on civil as opposed to criminal judgments.[10] Indeed, even assuming as I must since this matter arises in the form of a motion to dismiss that the Judgment was entered by the criminal court in Philadelphia as opposed to the civil court, *see supra* n. 2, that fact does not determine whether the debt at issue is penal in nature. There is no allegation in the Complaint that the Judgment was entered as a penal sanction for any act committed by the Debtor. Rather, the allegations reveal that the Judgment arose solely as a result of the Debtor's voluntarily assumed obligation on the bail bond and his son's failure to appear. Accordingly, the decisive factor under the interpretation of § 523(a)(7) adopted in *Collins, Damore, Midkiff* and *Paige* is whether, under Pennsylvania law, a surety's obligation on a forfeited bail bond is civil or penal in nature.

The City also points out that not all courts agree with the approach taken in

8. The City also argues that the cases cited by the Debtor are distinguishable from the instant case because they involved professional bondsmen and Philadelphia County where the Judgment was entered does not allow professional bondsmen. *See* City's Memorandum at 13. I find this argument unpersuasive. There is nothing in the language or the history of § 523(a)(7) to indicate that the determination of whether a debt is within its purview depends upon the characteristic of the particular bail system in place in the particular county at issue, including whether the debtor was a professional bondsman.

9. In *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Supreme Court stated that it "reject[ed] the view that §§ 523(a)(7) and 726(a)(4) implicitly refer only to civil fines and penalties" and that in *Kelly* it found "explicitly that § 523(a)(7) 'codifies the judicially created exception to discharge' for both civil and criminal fines." *Id.* at 562, 110 S.Ct. 2126. Based on these comments, § 523(a)(7) applies to *civil* and *criminal* fines, penalties and forfeitures. The characterization of the judgment is irrelevant. Thus, the City's argument that the Judgment is covered by § 523(a)(7) because it is a criminal judgment fails to advance the issue.

10. Contrary to the City's representation, *see* City's Memorandum at 6 n. 6, the decisions in *Collins, Damore, Midkiff* and *Paige* do not reveal whether the debts at issue were based on judgments entered in civil as opposed to criminal courts. In *Collins*, the Fourth Circuit mentioned that the debt was based on judgments arising from the debtor's bail bond obligations, but never stated whether the judgments were entered by a civil or criminal court. 173 F.3d at 926. Likewise in *Damore*, the court explained that the debt was based on two confessed judgments, but did not indicate whether the judgments were entered by a civil or criminal court. In *Midkiff*, the court stated that "[m]any of the forfeitures were reduced to judgment jointly against the particular named defendant and Midkiff as surety," which could mean that the judgments, since they were entered jointly against the defendant and the surety, were entered in criminal court. However, it is not clear. Lastly, in *Paige*, the court never mentioned whether the debt at issue had been reduced to judgment, simply referring instead to "bail bond forfeitures resulting from Paige's bail bond business." However, the *Paige* court stated: "From the standpoint of a surety on a bail bond, the obligation assumed *is certainly in the nature of a traditional civil debt. Although emanating from a criminal proceeding*, such an obligation does not carry with it the characteristics or badges of a penal sanction which Section 523(a)(7) contemplates." 1988 WL 62500, at \*4 (emphasis added).

*Collins, Damore, Midkiff* and *Paige.* In support of this statement, the City cites *Scott v. State of Alabama (In re Scott),* 106 B.R. 698 (Bankr.S.D.Ala.1989), and *In re Bean,* 66 B.R. 454 (Bankr.D.Colo.1986), *aff'd,* 72 B.R. 503 (D.Colo.1987). Through my own research, I discovered two additional decisions which support the City's position: *United States v. Zamora,* 238 B.R. 842 (D.Ariz.1999) and *United States v. Grooms,* 1997 WL 578752 (W.D.Va. August 29, 1997). The debtors in these four cases were, like the Debtor here, sureties on bail bonds issued to secure the appearance of criminal defendants.

In the most recent case, namely *Zamora,* the government sought a determination that the debtor's forfeited bail bond obligation was nondischargeable under § 523(a)(7). Adopting the rationale of *Damore* (which, as I noted above, adopted the rationale of *Paige* ), the bankruptcy court ruled that the bond obligation was dischargeable because it was contractual rather than penal in nature. *Zamora,* 238 B.R. at 844. The district court reversed. In so doing, it explicitly rejected the viewpoint that it is necessary to go beyond the plain language of § 523(a)(7) to determine whether a surety's bond obligation fits within the provision. *Id.* The district court stated as follows:

> The Court does not find *Damore* persuasive. In resolving whether the obligation here is nondischargeable, the Court need not address whether a surety's obligation on a forfeited bail bond is penal or contractual in nature. Here, the obligation falls expressly under the statute as a forfeiture. Unlike *Kelly,* which involved restitution, the Court need not go beyond the statute to determine whether the debt obligation intended to be non-dischargeable under § 523(a)(7).

> Applying the statute to this factual setting, the obligation is a forfeiture payable to and for the benefit of a governmental entity that is not compensation for pecuniary loss. The obligation

is non-dischargeable under 11 U.S.C. § 523(a)(7).

*Id.* at 844–45. Since, as noted above, I find the term "forfeiture" as used in § 523(a)(7) of unclear application in this situation, I am compelled to look beyond the plain language of the statute for guidance.

The other three cases which support the City's position do not directly involve § 523(a)(7), but in each case, the court commented upon the dischargeability of bail bond obligations and the importance of maintaining the integrity of the bail bond system by not permitting bail bond obligations to be avoided through bankruptcy. In *In re Bean, supra,* the debtors, like the debtor in the instant case, posted a bail bond for their son. As security for the bond, the debtors pledged their home. Approximately fourteen (14) days after a judgment was entered against the debtors on the bond as a result of their son's failure to appear, the debtors filed for bankruptcy. The government moved for relief from stay to execute on the judgment asserting, *inter alia,* that its actions fell within the "police or regulatory power" exception to the stay. The bankruptcy court agreed, reasoning:

> The system of bail serves several functions. First, a defendant needs time to prepare a case being tried or appealed, and so may be freed on bond. Second, the public safety demands an incentive for a person out on bail to appear at trial, hence a bond must be posted as an incentive. Further, permitting defendants to leave jail on an appearance bond helps eliminate overcrowding in jails, and reduces the occurrence of incarcerating an untried defendant for a lengthy period. The concept of bail is fundamental to Anglo–American law and central to our modern criminal procedure.

> However, this entire system could be undermined or destroyed if those persons who post appearance bonds may simply discharge their obligations under

the protection of the Bankruptcy Code. Much, if not all, of the incentive value of posting a bond would be lost, and judges would be far less likely to free defendants on bail. In addition, the prospect of losing some or all of the money put up for bond would cause bail bondsmen to be extremely hesitant about writing bonds, and courts to be extremely apprehensive about accepting bonds, whether secured or unsecured. Eventually, freedom on bail would be restricted to those defendants who could pay cash up front, *i.e.,* wealthy defendants only. Poor and middle class defendants would be forced to languish in overcrowded jails. The end results would be the virtual destruction of our system of bail, dangerous overcrowding of jails with pre-trial detainees, and inequitable discrimination against those defendants not fortunate enough to possess thousands of dollars in ready cash.

*Id.* at 456–57. On appeal, the district court affirmed, agreeing with the bankruptcy court's conclusion that the bail system would be weakened if sureties were permitted to escape the results of forfeiture by entering bankruptcy. *In re Bean,* 72 B.R. 503 (D.Colo.1987). On this point, the district court opined:

If every criminal bond surety were permitted to avoid § 362(b)(4), then the purpose of the bail statute would be seriously undermined. Further, criminal defendants could completely evade the stricture of § 362(b)(1) by having someone other than themselves post bond. The third-party surety could then ameliorate or alleviate the harshness of forfeiture by entering bankruptcy himself. Again, the result would be seriously detrimental to enforcement of the bail laws. Subsection 362(b)(4) is designed to prevent any such untoward consequences.

72 B.R. at 505 (footnote omitted).

In *Scott, supra,* the debtor was the surety on a bail bond that was forfeited when the criminal defendant failed to appear.

106 B.R. at 699. To collect on the bail bond, the government began garnishing the debtor's wages. After the debtor filed for bankruptcy, the garnishment continued and the debtor sought an injunction against the government. *Id.* Based on *In re Bean, supra,* the bankruptcy court held that the automatic stay did not apply since the government's action fell within the "police or regulatory power" exception of § 362(b)(4). *Id.* at 699–700. Further, the bankruptcy court declined to exercise its injunctive powers to stay the action of the government, reasoning that:

[T]he debtor's obligation to the State of Alabama is nondischargeable pursuant to § 523(a)(7) which excepts from discharge debts for a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." To issue an injunction preventing the State from proceeding with the garnishment during the pendency of the bankruptcy would only delay the inevitable and thwart the public welfare objective served by the state's action.

106 B.R. at 700–01.

Lastly, in *Grooms, supra,* the debtors pledged their home as collateral on a bail bond for a criminal defendant. 1997 WL 578752, at *1. Thereafter, the criminal defendant violated the conditions of the bail. Three days before the government filed for forfeiture on the bond, the debtors filed their bankruptcy petition. The issue before the court was whether the debtors' bankruptcy filing stayed the government's forfeiture proceeding. The court concluded that the forfeiture proceeding was excepted from the stay under the "police or regulatory power" exception of § 362(b)(4). In so holding, the court reasoned, in pertinent part:

[T]he [Debtors] admitted to the Magistrate Judge at the hearing to revoke bond that they had filed for bankruptcy deliberately to avoid the forfeiture of their house. To allow the [Debtors] to evade the forfeiture would be an affront

to the district court and a manipulation of the bankruptcy court. The government's intent in filing the action is to discourage violations of bond conditions. Release on bond serves the public interest in not incarcerating possibly innocent defendants and in allowing defendants time and freedom to prepare for trial. However, the value of the bond is directly related to the strength of the obligation created by the bond.... The forfeiture law on which the government relies upholds the bond system. The authority of this system and the court depends on enforcement of the forfeiture laws. Therefore, the need to reinforce the bond system, to uphold the dignity of the courts, and to discourage future evasive bankruptcy filings all lead this court to believe that a federal civil forfeiture action falls within the ambit of § 362(b)(4) and is excepted, therefore, from automatic stay.

*Id.* at *4–*5. In short, the *Grooms* court concluded that the bond system would be jeopardized if a debtor were permitted to avoid his or her obligation on a bond by filing for bankruptcy. *See also United States v. Caro,* 47 B.R. 995, 997 (E.D.N.Y. 1985) (stating in dictum that the government had made a compelling argument that its forfeiture proceeding against the debtor is covered by the "police or regulatory power" exception to the automatic stay because "its interest here is the protection of the public's health and safety, and that it seeks forfeiture only as a means to coerce defendant's presence.").

■ There is merit to the view that the integrity of the bail bond system may be jeopardized if individuals who are not professional bondsmen but agree to act as

sureties on bail bonds are permitted to avoid their obligations on the bonds by filing for Chapter 7 bankruptcy. Presumably, if such debtors are aware that they may discharge their bail bond obligations in bankruptcy, the motivation of criminal defendants to abide by their bail conditions may be adversely affected. However, a review of the legislative history to § 523(a)(7) and the other provisions in Chapter 7 of the Code that govern the treatment of claims for "fines, penalties and forfeitures," namely § 724(a) and § 726(a)(4),[11] convinces me that Congress intended the exception in § 523(a)(7) to apply only to obligations that are penal in nature consistent with the *Paige* line of cases. As such, these policy issues in favor of construing the term "forfeiture" in § 523(a)(7) to apply to a surety's obligation on a defaulted bond must yield to an interpretation of the statute in harmony with congressional intent.

I will briefly discuss the treatment of fines, penalties and forfeitures under the 1898 Act because the historical treatment of these obligations provides insight into Congress' enactment of § 523(a)(7), § 724(a) and § 726(a)(4). Under the Act, a creditor had to show that a claim was both "allowable" under § 57 of the Act and "provable" under § 63 of the Act in order to participate in distribution of the debtor's bankruptcy estate. *Commonwealth of Pennsylvania Department of Environmental Resources v. Tri–State Clinical Laboratories, Inc.,* 178 F.3d 685, 693 (3d Cir.1999). While the term "provable debts" was defined to include criminal penalties, *see id.,* section 57(j) of the Act specifically excluded penalties and forfeitures

**11.** When identical words are used in different parts of the same act, it is presumed that the words have the same meaning. *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.,* 508 U.S. 439, 460, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). Like § 523(a)(7), § 726(a)(4) uses the phrase "fine, penalty or forfeiture." Moreover, § 724(a) refers specifically to "a claim of the kind specified in § 726(a)(4)." Accordingly,

the legislative history to these sections is relevant in seeking to understand the meaning of the phrase "fine, penalty and forfeiture" in § 523(a)(7). *See also Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 561–62, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) ("The United States acknowledges that the phrase 'fine, penalty, or forfeiture' as it appears in § 726(a)(4) must have the same meaning as in § 523(a)(7).").

from the class of "allowable debts" insofar as they did not compensate for actual loss. Section 57(j) stated:

> Debts owing to the United States, a State, a county, a district, or a municipality as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose.

*Id.* at 693 (*quoting* 30 Stat. 561). Thus, under the Act, "criminal fines were not allowable debts subject to distribution from the estate under Chapter 7." *Id.* at 693–94.

Dischargeability under the 1898 Act was governed by § 17. Pursuant to this provision, a discharge in bankruptcy released a bankrupt from all provable debts subject to several exceptions listed in other provisions of § 17. Although § 17 listed four types of debts excepted from discharge, it did not mention criminal penalties of any kind. *Kelly, supra,* 479 U.S. at 44, 107 S.Ct. 353. As the Supreme Court noted in *Kelly,* while the omission of language in § 17 excepting criminal penalties from discharge could have been interpreted to mean that such obligations were discharged in bankruptcy, courts did not interpret the Act in this manner. *Id.* at 44–45, 107 S.Ct. 353. Rather, they held that criminal penalties were not debts within the meaning of the 1898 Act and, therefore, were not governed by § 17. *See e.g., Parker v. United States,* 153 F.2d 66, 71 (1st Cir.1946). Indeed according to the Supreme Court in *Kelly,* "this reasoning was so widely accepted by the time that Congress enacted the new Code that a leading commentator could state flatly that 'fines and penalties are not affected by a discharge.' *citing* 1A Collier on Bankruptcy ¶ 17.13 pp. 1609–1610, and n. 10 (14th ed.1978)." *Kelly,* 479 U.S. at 44–45, 107 S.Ct. 353. Therefore, under the 1898 Act, the government was not permitted to share the distribution from the estate for criminal penalties, but such obligations were not discharged.

In enacting Chapter 7 of the Bankruptcy Code, Congress codified the judicially created exception from discharge for criminal penalties, and opted to subordinate such claims to other claims against the estate for purposes of distribution rather than disallowing them. As noted above, the Code provisions dealing with fines, penalties and forfeitures that are applicable in the context of a Chapter 7 case are §§ 523(a), 724(a) and § 726(a)(4).

Section 726 sets forth the distribution scheme in Chapter 7 bankruptcies cases. *United States Trustee v. Endy (In re Endy),* 104 F.3d 1154, 1155 (9th Cir.1997). Subsection (a)(4) of that section states, in pertinent part:

> [P]roperty of the estates shall be distributed ... fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture ... to the extent such fine, penalty, or forfeiture ... is not compensation for actual pecuniary loss suffered by the holder of such claim.

11 U.S.C. § 726(a)(4). Pursuant to this provision, claims for fines, penalties, and forfeitures share in the distribution of the bankruptcy estate but are subordinated to fourth position after all allowed unsecured claims. The Senate Report on this section states:

> Paragraph (4) provides that *punitive penalties,* including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case. In effect, these penalties are payable out of the estate's assets only if and to the extent that a surplus of assets would otherwise remain at the close of the case for distribution back to the debtor.

S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), 1978 U.S.Code. Cong. & Admin. News 5787 (emphasis added). "Punitive" is defined in the Merriam–Webster's Collegiate Dictionary (10th ed.) to mean "inflicting, involving, or aiming at punishment."

*See also* Black's Law Dictionary (6th ed.) ("punitive" means "relating to punishment; having the character of punishment or penalty; inflicting punishment or a penalty"). By utilizing the phrase "punitive penalties" to refer to the claims covered by § 726(a)(4), Congress indicated that the terms "fine, penalty, and forfeiture" are restricted to obligations which are penal in nature.

Section 724(a) specifically refers to § 726(a)(4), stating:"[t]he trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." 11 U.S.C. § 724(a). The legislative history to § 724(a) states, in pertinent part:

> Subsection (A) of section 724 permits the trustee to avoid a lien that secures a fine, penalty or forfeiture ... to the extent that the claim is not compensation for actual pecuniary loss. *The subsection follows the policy found in section 57j of the Bankruptcy Act of protecting unsecured creditors from the debtor's wrongdoing,* but expands the protection afforded.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977), reprinted in 1978 U.S.Code Congr. & Admin. News 5963 (emphasis added). This history specifically states that the purpose of § 57(j), which was the predecessor to § 724(a) and § 726(a)(4), was to protect unsecured creditors from "the debtor's wrongdoing." Again, this brings me to the conclusion that the terms "fine, penalty and forfeiture" are restricted to obligations that are penal in nature arising out of the debtor's wrongful conduct.

Finally, the legislative history to § 523(a)(7), which is the provision at issue herein, provides:

> Paragraph (7) makes nondischargeable certain liabilities for *penalties* including tax penalties ...

S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), 1978 U.S.Code. Cong. & Admin. News 5787 (emphasis added). Congress' choice of the word "penalties" to summarize the liabilities which § 523(a)(7) is intended to except from discharge indicates that the terms "fine, penalty and forfeiture" mean obligations that are penal in nature.

■ Based on the legislative history for §§ 523(a)(7), 724(a) and 724(a)(6), I conclude that Congress intended the terms "fine, penalty or forfeiture" to refer to obligations imposed upon the debtor as punishment for his wrongdoing, whether they are labeled a fine, penalty or forfeiture. Debtor argues that under Pennsylvania law a surety's obligation on a forfeited bail bond is a contractual obligation and, therefore, civil as opposed to penal in nature. In support of this point, he cites *Commonwealth v. Hill,* 180 Pa.Super. 430, 432–33, 119 A.2d 572, 573 (1956) wherein the Superior Court, in an appeal from an order denying a petition for remission of forfeiture of a bail bond, reasons that a recognizance bond "is a contract of suretyship and as such is subject to the rules of construction applicable to contracts generally." I am persuaded that under Pennsylvania law, a surety's obligation on a bail bond is a contractual obligation and, therefore, civil in nature. The obligation arises because a condition of the bond was breached and not because the surety is being punished. Accordingly, the Debtor's obligation on the bail bond is not within the scope of § 523(a)(7).

■ As I indicated above, I recognize that allowing sureties to avoid their obligations on bail bonds by filing for Chapter 7 bankruptcy may, in situations such as this, undermine the bail bond system. However, I am required to construe the statute as it was drafted. "[I]t is this Court's duty to merely interpret the language of the Code and not to write it. Only Congress can alleviate or cure any defect which exists in the statutes which courts must interpret." *Erickson v. District Court of the State of Colorado (In re Erickson),* 104 B.R. 364, 371 (Bankr. D.Colo.1989).

### III.

Since the City has failed to state a claim upon which relief can be granted, Debtor's motion to dismiss shall be granted and the Complaint shall be dismissed. An Order consistent with this Memorandum Opinion will be entered.