**In re GI NAM.**

**No. 00–347.**

United States District Court, E.D. Pennsylvania.

Nov. 3, 2000.

### MEMORANDUM

DALZELL, District Judge.

This bankruptcy appeal raises a close question our Court of Appeals has not yet addressed, namely, whether a bail bond surety's debt to the Commonwealth of Pennsylvania arising from the defendant's failure to appear is dischargeable in the surety's Chapter 7 bankruptcy. This question, which implicates uncommonly interesting policy issues, has a personal pun-

gency here, as the surety is the father of the defendant-son.

## I.  *Background*

### A.  *Facts* [1]

Gi Nam's son, David Nam, was charged on September 22, 1997 with various offenses, including murder, robbery, and burglary following the shooting death of Anthony Schroeder during a robbery on March 5, 1997. Bail was set at $1,000,000, and by a Certification of Bail and Discharge dated January 12, 1998, Gi Nam agreed to serve as a surety for the bail,[2] *see* Compl. Ex. A. The operative portion of the Certification of Bail and Discharge reads: "WE THE UNDERSIGNED, defendant and surety, our successors, heirs and assigns, are jointly and severally bound to pay the Commonwealth of Pennsylvania in the sum of ONE MILLION dollars ($1,000,000). WE are bound by the CONDITIONS of this bond as shown on both sides of this form."

The Certification contained the signatures of David Nam and Gi Nam, and includes the surety's acknowledgment that he is "legally responsible for the full amount of the bail." The Certification also includes a number of conditions of the bond, including that the defendant appear before the courts as directed, submit to all court orders, commit no criminal act, and comply with any conditions of release. The Certification requires that "[t]he DEFENDANT and the SURETY must give written [notice] to the issuing authority . . . of any change in his address within forty-eight hours of the date of his address change." The Certification contains a confession of judgment provision, and further states, "If defendant performs the conditions as set forth herein, then this bond is to be void, otherwise the same shall remain in full force and this bond in the full sum thereof shall be forfeited."

On March 12, 1998, David Nam failed to appear for a pre-trial status listing in the criminal case, and thereafter, on April 6, 1998, a Judgment was entered in the Court of Common Pleas of Philadelphia County, Criminal Section, against Gi Nam in the amount of $1,000,018.50 [3] as a result of David Nam's failure to appear.[4] The notice of entry of judgment, *see* Compl. Ex. B, stated that the judgment was entered against Gi Nam and that it was entered in the case of "Commonwealth of Pennsylvania vs David H. Nam". The notice stated, "You may reduce your financial responsibility by producing the defendant forthwith and filing a petition with the Clerk of Quarter Sessions to vacate, in total or in part, the judgement [*sic*] against you,"

---

1.  As we discuss below, the City of Philadelphia here appeals the Bankruptcy Court's December 8, 1999 Order granting Debtor's motion to dismiss the City's Complaint in Bankruptcy No. 99–16565DWS and Adversary No. 99–815, pursuant to Fed.R.Civ.P. 12(b)(6). We therefore consider the facts as they are alleged in the Complaint or as they are disclosed in the public documents attached as exhibits thereto, *see Pension Ben. Guar. Corp. v. White Consol. Ind.*, 998 F.2d 1192, 1196 (3d Cir.1993)("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

2.  Although this is not clear from the Complaint, it would appear that the Debtor-father paid ten percent of the bail amount, or $100,000, in cash, *see* Compl. Ex. A (Certification of Bail and Discharge with space labeled "Amount of Bail Paid" filled out as "100,000").

3.  The $1,000,000 bail plus $18.50 in costs.

4.  From the terms of the Certification of Bail and Discharge, it would appear that the judgment was in favor of the Commonwealth of Pennsylvania. As noted above, however, it is the City of Philadelphia that commenced this adversary action. The Bankruptcy Court noted this concern without addressing it, and in its papers the City maintains that it is the real party in interest pursuant to 42 Pa. Con. Stat. Ann. § 3572. In any event, particularly as the court below made no rulings with respect to this question, we see no reason to address it here, and shall assume without deciding that the City is indeed the proper party in interest here.

and was signed by "Alex Bonavitacola, President Judge, Court of Common Pleas of Philadelphia." David Nam evidently remains a fugitive.

## B. *Procedural History*

The Debtor, Gi Yeong Nam, petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code on May 19, 1999. On August 27, 1999, the City of Philadelphia filed its Complaint in Adversary No. 99–815, alleging that Gi Nam had listed the bail bond judgment as an "unsecured non-priority claim" in the schedules he had filed in the bankruptcy case, and that this debt was in fact not dischargeable pursuant to 11 U.S.C. § 523(a)(7). The Debtor subsequently filed a motion to dismiss the Complaint on September 22, 1999, pursuant to Fed.R.Civ.P. 12(b)(6), maintaining that the bail bond debt was dischargeable. After briefing, Bankruptcy Judge Sigmund held a hearing on the motion on October 25, 1999 and by a Memorandum Opinion and Order dated December 8, 1999 she granted the Debtor's motion. This appeal followed [5].

## C. *The Bankruptcy Court's Opinion*

Before moving forward with our discussion, we pause to review the findings the court below reached, *see In re Gi Yeong Nam*, 255 B.R. 149 (Bankr.E.D.Pa.1999).

The Bankruptcy Court first addressed the scope of the exceptions to dischargeability provided by § 523(a)(7), and as an initial matter concluded that it was unclear that the term "forfeiture" used in the statute necessarily applied to the circumstances of Debtor's obligation to the Commonwealth, *see In re Gi Yeong Nam*, 255 B.R. at 152. Judge Sigmund then reviewed the cases Debtor cited to the effect that a debt owed to the government by a surety on a forfeited bail bond is not within the scope of the § 523(a)(7) exception. After reviewing the reasoning of these cases, Judge Sigmund rejected the City's claim that it could be distinguished from the facts of this case on the ground that the Debtor's cited cases involved civil judgments, while this case, the City maintained, involved a criminal judgment, *see In re Gi Yeong Nam*, 255 B.R. at 156.

The Bankruptcy Court then examined the City's authority for the proposition that a surety's bail bond debts are nondischargeable pursuant to § 523(a)(7), and concluded that most[6] of these cases relied, in reaching that decision, on those courts' concerns for the integrity of the bail bond system, which might suffer if bail bond debts were dischargeable, *see In re Gi Yeong Nam*, 255 B.R. at 157. Judge Sigmund concluded that "there is merit to the view that the integrity of the bail bond system may be jeopardized if individuals who are not professional bondsmen but agree to act as sureties on bail bonds are permitted to avoid their obligations on the bonds by filing for Chapter 7 bankruptcy," *In re Gi Yeong Nam*, 255 B.R. at 159. Judge Sigmund then proceeded to examine the historical precursors to § 523(a)(7) and its legislative history, and concluded that Congress only intended the exception provided in § 523(a)(7) to go to obligations that were penal in nature—that is, that were imposed on the debtor as punishment

---

**5.** We express our appreciation to both parties for their exceptionally well-organized and thorough briefs, which have greatly aided our consideration of this difficult issue.

**6.** The exception, which we will discuss further below, is *United States v. Zamora*, 238 B.R. 842 (D.Ariz.1999), in which the court

held that the plain language of § 523(a)(7) (rather than policy concerns) showed that the bail surety's obligation came under the § 523(a)(7) exception to discharge. Judge Sigmund noted that unlike *Zamora*, she found that the term "forfeiture" did not have clear application here, *see In re Gi Yeong Nam*, 255 B.R. at 157.

for the debtor's wrongdoing, *see In re Gi Yeong Nam*, 255 B.R. at 161.

Having so found, the Bankruptcy Court then examined Pennsylvania law and concluded that the obligation of a bail bond surety is civil, and not penal, in nature, and that therefore Gi Nam's debt resulting from his suretyship on the bail bond was dischargeable, *see In re Gi Yeong Nam*, 255 B.R. at 161.

## II. *Issues on Appeal*

As the City notes,[7] the issues on appeal are as follows:

1. Whether the lower court erred as a matter of law in finding that the criminal bail surety judgment entered against Mr. Nam is not a non-dischargeable find, penalty or forfeiture pursuant to 11 U.S.C. § 523(a)(7) including, but not limited to:

a. Whether the lower court erred as a matter of law in looking beyond 11 U.S.C. § 523(a)(7)'s express statutory language;

b. Whether the lower court's finding that criminal bail surety judgments are incapable of being precluded from discharge as "fines, penalties or forfeitures" under 11 U.S.C. § 523(a)(7) is contrary to—and undermining of—the Commonwealth of Pennsylvania's and Philadelphia County's bail surety process; and

c. Whether, in light of the factual distinction between private bail bondsmen and "bail surety municipalities", the lower court erred as a matter of law in finding that the criminal bail surety judgment entered against Mr. Nam is

not a fine, penalty or forfeiture payable under 11 U.S.C. § 523(a)(7).

2. Whether the lower court erred in finding that—despite the Complaint's allegations, attachments, and all reasonable inferences that can be drawn therefrom, and even when viewed in a light most favorable to the City of Philadelphia—the City of Philadelphia was unable to prove any set of facts supporting its claim that the criminal bail surety judgment entered against Mr. Nam is a non-dischargeable "fine, penalty or forfeiture" under 11 U.S.C. § 523(a)(7) and entitling the City of Philadelphia to the relief of non dischargeability.[8]

## III. *Appellate Jurisdiction and the Standard of Review*

### A. *Appellate Jurisdiction*

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

### B. *Standard of Review*

██ Generally, in reviewing a bankruptcy court's decisions, we review its legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof, *see In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir.1998). Here, as we consider an appeal from the Bankruptcy Court's legal determination dismissing the City's Complaint pursuant to Fed.R.Civ.P. 12(b)(6), our review is *de novo*.

## IV. *Analysis* [9]

Our analysis here comes down to three issues: (1) the scope of the exception to

---

**7.** *See* Designation of Items to Be Included In Appellate Record and Statement of Issues to Be Presented On Appeal, R. at Tab 4.

**8.** Although these are the issues the City sets forth in its Statement of Issues on Appeal, the City's Appellate brief itself is not organized around these discrete questions, although it does ultimately address each of them. Instead, the Appellant's brief states that the issue presented is, "Did the Bankruptcy Court erroneously discharge the debtor's bail bond forfeiture obligation, in excess of $1 million, in granting the debtor's motion to dismiss the

City of Philadelphia's complaint, where the Bankruptcy Code explicitly exempts forfeitures from discharge, and where discharging the forfeiture impermissibly interferes with the criminal prosecution of the debtor's son?" Appellant's Br. at 1. We find that given the nature of the Bankruptcy Court's decision, the exact statement of the issues on appeal is of little moment to the manner in which we address the parties' arguments here.

**9.** As we here review a decision made under Fed.R.Civ.P. 12(b)(6), we apply the corresponding standard. When considering a mo-

discharge delineated by 11 U.S.C. § 523(a)(7), (2) the character of the debt owed to the Commonwealth by Gi Nam, and (3) whether that debt consequently falls within § 523(a)(7).

## A. Construction of 11 U.S.C. § 523(a)(7)

11 U.S.C. § 523 states, in pertinent part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt –

. . . .

(7) to the extent such debt is for a[1] fine, penalty, or forfeiture [2] payable to and for the benefit of a governmental unit, and [3] is not compensation for actual pecuniary loss

. . . .

■ "To determine whether [a debt] is dischargeable under § 523(a)(7), we must determine whether [the] debt meets the three requirements of the section." *In re Rashid*, 210 F.3d 201, 206 (3d Cir.2000). For the purposes of this appeal, there is no dispute between the parties that Gi Nam's debt as alleged is payable and for the benefit of a governmental unit, either or both of the Commonwealth of Pennsylvania and the City of Philadelphia, nor is there any dispute that the $1,000,000[10] bail bond debt, as alleged, is not compensation for any pecuniary loss by those governmental units or anyone else[11].

■ Thus, we need only concern ourselves with the scope of the statute's "fine, penalty, or forfeiture" language. The City argues that since Gi Nam's bail bond debt is in fact a "forfeiture" of the bond amount resulting from his son's failure to appear, the debt falls within the plain language of the statute. The Debtor, conversely, argues that the statute only creates an exception for penal debts, into which category Nam's obligation does not fall.

We first note that both the Supreme Court and the only Court of Appeals to address the question of the dischargeability under § 523(a)(7) of a surety's bail bond debt have found that § 523(a)(7) applies to penal sanctions. In considering this provision in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court found that "[o]n its face, [§ 523(a)(7) ] creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures," *Kelly*, 479 U.S. at 51, 107 S.Ct. at 362 [12].

tion to dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), we must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them. Dismissal under Rule 12(b)(6) ... is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved," *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990), *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

10. We suppose that there might be some question as to whether the $18.50 in costs levied on Nam is in compensation for a pecuniary loss, but undoubtedly the $1,000,000 value of the bond itself is not.

11. Ultimately, the burden of showing that a particular debt is nondischargeable under § 523 is on the creditor, who must establish this by a preponderance of the evidence, *see In re Cohn*, 54 F.3d 1108, 1114 (3d Cir.1995),

but these standards are not in play in the Rule 12(b)(6) context here.

12. In *Kelly*, the Supreme Court addressed the question of whether restitution paid as a condition of probation to the state probation department by a person convicted of larceny was a debt dischargeable in Chapter 7 bankruptcy. The Court ultimately found that such a restitution payment was penal in nature, and that it therefore fell under the § 523(a)(7) exception, notwithstanding that "restitution" as such is not included in the statute. In reaching this conclusion, the Court construed the statute as quoted in the text, that is, as encompassing all penal sanctions. We recognize that given the context in which it was made, the Supreme Court's construction of § 523(a)(7) in *Kelly* does not necessarily foreclose the application of that provision to a bail bond surety's debt. Nonetheless, as did the Fourth Circuit in *In re Collins*, which we discuss below, we grant significant weight to the Supreme Court's construction.

Similarly, the Fourth Circuit, considering an issue identical to that we face here[13], found that "[t]he nondischargeable 'fine, penalty, or forfeiture' under § 523(a)(7) is an obligation that is essentially penal in nature," *In re Collins*, 173 F.3d 924, 931 (4th Cir.1999). In *Collins*, the debtor (Collins) was a professional bail bondsman in Norfolk, Virginia who had failed to pay off the bonds of several defendants who had skipped their court appearances. Collins declared bankruptcy under Chapter 7, and ultimately sought a determination that the debts owed on these bonds were dischargeable in the bankruptcy. The panel found, as quoted above, that the language of § 523(a)(7) showed that the exception it delineates is for penal sanctions. In reaching this conclusion, the panel relied upon the Supreme Court's construction in *Kelly*, noting that *Kelly* had distinguished obligations arising from "contractual, statutory, or common law dut[ies]", which are not covered by the exception, from those "rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." *In re Collins*, 173 F.3d at 931 (quoting *Kelly*, 479 U.S. at 52, 107 S.Ct. at 362). The *Collins* panel went on to note that this treatment was consistent with prior decisions in the Fourth Circuit that had held that court costs assessed against a criminal defendant were not dischargeable under § 523(a)(7) because such a debt operated in conjunction with the penal and sentencing goals of the criminal justice system, *see In re Collins*, 173 F.3d at 931–32 (discussing *Thompson v. Com.*, 16 F.3d 576 (4th Cir.1994)).

Our own analysis of the language of the § 523(a)(7) supports *Collins*, and we hold that the exception to discharge in § 523(a)(7) applies only to penal sanctions that result from the debtor's wrongdoing.

**13.** As noted above, *Collins* is the only decision of a Court of Appeals addressing the application of § 523(a)(7) to a surety's bail bond obligation. The parties have, however, directed us to a number of District and Bankruptcy Court decisions on this issue. Cases holding that a bail bond surety debt does not fall under § 523(a)(7) and is dischargeable, are *In re Damore*, 195 B.R. 40 (Bankr.E.D.Pa.1996); *In re Midkiff*, 86 B.R. 239 (Bankr.D.Colo. 1988); and *In re Paige*, Nos. 86 B 8072, 87 E 194, 1988 WL 62500 (Bankr.D.Colo. Apr.15, 1988). As Judge Sigmund noted in her opinion, both *Damore* and *Midkiff* rely on *Paige*, and therefore for our purposes we only need discuss *Paige*. In construing § 523(a)(7), the *Paige* court closely examined the Supreme Court's opinion in *Kelly v. Robinson*, and concluded that § 523(a)(7) applies to obligations that are "essentially penal in nature," *In re Paige*, 1988 WL 62500 at *3. The court found further support for this holding in pre-Code case law discussed in *Kelly*. *Paige* then noted that under Colorado law, a surety bond was treated just like any other contractual obligation, and consequently held that the bail bond surety debt did not fall under § 523(a)(7), noting that to find that a bail bond surety debt was nondischargeable "would, in effect, impose a penal sanction where one was never imposed in the first instance," *In re Paige*, 1988 WL 62500 at *4.

The City cites to several other lower court cases that addressed the status of bail bond surety debts in support of its argument that such debts are nondischargeable under § 523(a)(7): *United States v. Zamora*, 238 B.R. 842 (D.Ariz.1999); *In re Grooms*, No. 96–00071-C, 1997 WL 578752 (W.D.Va. Aug.29, 1997); *In re Scott*, 106 B.R. 698 (Bankr.S.D.Ala.1989), and *In re Bean*, 72 B.R. 503 (D.Colo.1987). In *Zamora*, which we discuss more below, the court found that on the plain language of the statute, a bail bond surety's "forfeiture" falls under § 523(a)(7). *Grooms*, *Scott*, and *Bean* each approached this issue in a slightly different legal posture: rather than addressing the question of whether § 523(a)(7) covers bail bond surety debts, they addressed the question of whether attempts to collect such debts are not subject to automatic stay pursuant to 11 U.S.C. § 362(b)(4), which excepts from stay "an action or proceeding by a governmental unit to enforce such governmental unit's ... police or regulatory power." The primary force of these cases in support of the City's contention lies in their discussion of the policy concerns surrounding our treatment of bail bond surety debts, and we will discuss this issue more below.

In examining the use of "forfeiture,"[14] we begin with that word's definition. *Forfeiture* is

> [a] comprehensive term which means a divestiture of specific property without compensation; it imposes a loss by the taking away of some preexisting valid right without compensation. A deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition. Loss of some right or property as a penalty for some illegal act. Loss of property or money because of breach of a legal obligation....

*Black's Law Dictionary* 650 (6th ed.1990) (citations omitted). As is clear from this definition, "forfeiture" is an extremely broad term, embracing both deprivations of rights resulting from a party's wrongdoing, as in "a penalty for some illegal act", as well as those deprivations not associated with wrongdoing as such.

We therefore must interpret the meaning of "forfeiture" in this context by reference to the terms that accompany it.[15] "Under the principle of *ejusdem generis*, when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration," *Norfolk & Western Rwy. Co. v. American Train Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S.Ct. 1156, 1163, 113 L.Ed.2d 95 (1991). "Similarly, the canon of construction *noscitur a sociis* instructs that a provision should not be viewed in isolation but in light of the words that accompany it and give [it] meaning." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258 (3d Cir.2000) (internal quotation marks omitted). With respect to this latter canon, the Supreme Court has stated that "The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to Acts of Congress," *Folger Adam Sec.*, 209 F.3d at 258 (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961)). Further, our statutory interpretation is also guided by the "familiar principle[ ] that words grouped in a list should be given related meaning," *Massachusetts v. Morash*, 490 U.S. 107, 114–15, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (internal quotation marks omitted).

Applying these canons of construction, we observe that the generality of *forfeiture*'s dictionary definition stands in contrast to the other terms used in the statute, since "penalties" and, especially, "fines," both refer exclusively to a punishment levied for an actor's wrongdoing.

A *penalty* is "[an] elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." *Black's Law Dictionary* 1133 (6th ed.1990).[16] While this definition

---

**14.** The City makes no argument, nor could it, that Nam's debt is either a "penalty" or a "fine", and we therefore focus on "forfeiture".

**15.** It is at this point in the analysis that we part from the reasoning of the court in *United States v. Zamora*, the case upon which the City most directly relies. In *Zamora*, the court faced an identical situation as we do here, namely, the question of whether the bail bond surety liabilities of a debtor are nondischargeable under § 523(a)(7), *see United States v. Zamora*, 238 B.R. 842, 843 (D.Ariz. 1999). *Zamora* concluded that such debts are not dischargeable because the debt resulted, by the terms of the bond, from a "forfeiture", that therefore "Debtor's obligation on the forfeited bail bond appears to fall squarely within the parameters of § 523(a)(7)," *Zamora*, 238 B.R. at 844, and that "the obligation falls expressly under the statute as a forfeiture," *Zamora*, 238 B.R. at 845. While we recognize the elegant directness of *Zamora's* approach, with due respect to our sister court we find that § 523(a)(7)'s language requires a more involved analysis.

**16.** This is the first definition for *penalty* given in *Black's Law Dictionary*. An additional definition or example *Black's* gives is "[t]he sum of money which the obligor of a bond under-

by its own terms is also quite broad, it illustrates that the central concept surrounding a *penalty* is that of punishment. Similarly, the applicable definition from the *Oxford English Dictionary* states that a *penalty* is "[a] punishment imposed for breach of law, rule, or contract; a loss, disability, or disadvantage of some kind, either ordained by law to be inflicted for some offence or agreed upon to be undergone in case of violation of a contract," XI *Oxford English Dictionary* 461 def. 2a (2d ed.1989). Again, the theme of punishment for wrongdoing pervades the definition.

With respect to *fine, Black's* defines this word only as a verb, to mean "[t]o impose a pecuniary punishment or mulct. To sentence a person convicted of an offense to pay a penalty in money." *Black's Law Dictionary* 632 (6th ed.1990). The *Oxford English Dictionary* defines [17] *fine* as "[a] certain sum of money imposed as the penalty for an offence" V *Oxford English Dictionary* 926 def. 7c. Here, the use of "fine" in § 523(a)(7) can only be an unambiguous reference to a penal measure.

We therefore find that § 523(a)(7) includes in series two terms, "fine" and "penalty", which clearly refer to penal sanctions—and a third, "forfeiture", which refers generally to any loss of a right, whether or not penal. We must conclude that Congress intended that this more general term be construed in a similar

light as the two more specific terms, and we therefore conclude that "forfeiture" as used in § 523(a)(7) refers only to a penal sanction resulting from a party's wrongdoing, and not more generally to any loss of a right.

▪ We observe that this interpretation finds support both under the policy behind bankruptcy law in general and under judicial application of § 523(a)(7). The central purpose of the Bankruptcy Code is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debts," *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (internal quotation marks omitted). The Bankruptcy Code limits this "fresh start" "opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" *Grogan*, 498 U.S. at 286–87, 111 S.Ct. at 659. Thus, the exceptions to dischargeability reflect a Congressional conclusion that in some instances the creditor's interest in full repayment outweighs the debtor's interest in a fresh start, *Grogan*, 498 U.S. at 287, 111 S.Ct. at 659.[18] Our interpretation of § 523(a)(7) serves this goal by limiting the exception to discharge to those debts resulting from the debtor's own wrongdoing.

---

takes to pay in the event of his omitting to perform or carry out the terms imposed upon him by the conditions of the bond." *Black's Law Dictionary* 1133. Again, this definition reflects that a penalty is imposed upon a party for his wrongdoing, in this case, a failure to meet the conditions of a bond. While this definition might seem at first glance to apply to our facts here, it does not, since, as we will discuss more below, it was not Gi Nam, but instead his son, who failed to act in accordance with the bond. We note that *Black's* also refers to a penalty with reference to contract penalties, but an examination of § 523(a)(7)'s language shows that this is not the sort of "penalty" contemplated in that section. A "penalty" provision in a contract that is unreasonable in light of the loss caused by the breach, or a "penalty" provision in a

bond that provides for the payment of an amount in excess of the loss caused by nonperformance, are both unenforceable as against public policy, *see Restatement (Second) of Contracts* § 356, *see also* Uniform Commercial Code § 2–718. Conversely, § 523(a)(7) explicitly requires that the exception to discharge only applies to payments that are not in compensation for actual pecuniary loss, and thus no enforceable contract "penalty" would fall under this provision.

**17.** Again, we provide the definition pertinent to the context.

**18.** We further note that the "exceptions to discharge are to be strictly construed in favor of the debtor," *In re Fegeley*, 118 F.3d 979, 983 (3d Cir.1997).

We are fortified in our conclusion when we examine how courts have applied § 523(a)(7) to cases outside of debts arising from criminal convictions. Even when courts find that § 523(a)(7) renders nondischargeable a debt that did not arise from an actual criminal conviction, such nondischargeable debts still arise from the debtor's own wrongdoing, *see, e.g., In re Edwards*, 233 B.R. 461, 477 (Bankr.D.Idaho 1999) (civil penalty resulting from, *inter alia*, debtor's sale of "gray market" tractors is nondischargeable pursuant to § 523(a)(7)); *In re Lee*, 222 B.R. 32, 34–35 (Bankr.W.D.N.Y.1998) (contempt award resulting from debtor's failure to abide by stipulation with state agency to settle environmental charges is nondischargeable pursuant to § 523(a)(7)); *In re Carlson*, 202 B.R. 946, 950–51 (Bankr.N.D.Ill.1996) (costs assessed against debtor by Attorney Registration and Disciplinary Commission as result of disciplinary hearing which led to debtor's temporary suspension from practice are nondischargeable pursuant to § 523(a)(7)); *In re Telsey*, 144 B.R. 563, 565 (Bankr.S.D.Fla.1992) (disgorgement resulting from debtor's violation of an SEC order is nondischargeable pursuant to § 523(a)(7)); *In re Renfrow*, 112 B.R. 22, 24 (Bankr.W.D.Ky.1989) (civil penalties arising from debtor's violations of state coal mining regulations nondischargeable pursuant to § 523(a)(7)). Again, our point here is that while courts have held § 523(a)(7) to apply to a variety of debts not resulting strictly from a criminal proceeding, in each case the debt arises from the debtor's own wrongdoing.

We conclude, therefore, that § 523(a)(7)'s exception to discharge is limited to penal sanctions for a debtor's wrongdoing.[19] Having arrived at this in-

---

**19.** As discussed above, we find this interpretation to be the only one that comports with the language used in the statute. We note that the Debtor's own arguments in support of this interpretation rely on pre-Code bankruptcy practice and on the provision's legislative history, but we do not find either of these sources useful or convincing for the purposes of our analysis.

We begin with the pre-Code bankruptcy practice. The Debtor notes that courts interpreting the present Bankruptcy Code have referred to the practices under the Act of 1898 that preceded it, and in construing provisions of the Code that were codifications of earlier judge-made law, as § 523(a)(7) evidently was, courts interpret the codification to match the prior judge-made law absent evidence of specific intent that it be interpreted otherwise, *see Kelly*, 479 U.S. at 44, 47, 107 S.Ct. at 358, 359.

Valid though this may be as an interpretive tool, it does not help us here where prior to the present Code courts treated bail bond surety obligations both as dischargeable and as nondischargeable, *compare United States v. Hawkins*, 20 F.2d 539 (S.D.Cal.1927) (holding that debts owed to the United States for liabilities of the debtor as a surety on bail bonds are "of a class as to which a discharge in bankruptcy is a release") *with In re Caponigri*, 193 F. 291, 292 (S.D.N.Y.1912) (Hand, J.) (holding that a bail bond surety debt was not an "allowable" debt in bankruptcy because it is a penalty) *and Matter of Lake*, XXII Am.

Bankr.R. (N.S.) 168 (F.Ref.Minn.1932) (citing *Caponigri* and holding that bail bond debts are a penalty or forfeiture and that were therefore not allowed pursuant to section 57j of the Act); *cf. Kelly*, 479 U.S. at 44–45, 107 S.Ct. at 358 (discussing the interplay between sections 57 and 17 of the Act of 1898). In view of such mixed practice prior to the Code, we are hesitant to base our analysis of the statute upon it.

Debtor also argues that the legislative history of § 523(a)(7) and related provisions shows that "fine, penalty, or forfeiture" was meant only to address penal sanctions. The portion of the legislative history of the Bankruptcy Reform Act of 1978 that refers to § 523(a)(7) reads as follows:

> Paragraph (7) makes nondischargeable certain liabilities for penalties including tax penalties if the underlying tax with respect to which the penalty was imposed is also nondischargeable (sec.523(a)(7)). These latter liabilities cover those which, but are penal in nature, [*sic*] as distinct from so-called "pecuniary loss" penalties which, in the case of taxes, involve basically the collection of a tax under the label of a "penalty."

S. Rep. No. 95–989 at 79, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865.

The Debtor argues that this text shows that Congress intended § 523(a)(7) to go only to "penalties"—that is, debts involving "punishment"—and that therefore a bail bond surety debt is not within the provision. We do not

terpretation of § 523(a)(7), we now move to examine the nature of Gi Nam's debt to the Commonwealth.

### B. *Character of Gi Nam's Debt*

██ Under our interpretation of § 523(a)(7), we must consider whether Gi Nam's debt resulting from his suretyship for his son's bail bond is a penal sanction resulting from Gi Nam's own wrongdoing. The debt cannot fairly be so characterized.

As this is an appeal from a dismissal pursuant to Rule 12(b)(6), we refer in the first instance to the allegations in the City's Complaint. As discussed above, the City alleges that the Debtor agreed to serve as a surety on his son's bail, *see* Compl. ¶ 8, that both the Debtor and his son signed the document, thereby agreeing to give notice of any change of address for the son, *see* Compl. ¶ 9, and that a judgment was entered against the Debtor "[a]fter David Nam failed to appear for a pretrial status listing in the Criminal Proceeding," Compl. ¶ 10.

We first observe that these allegations in the Complaint do not amount to a claim that Gi Nam himself engaged in wrongdoing outside of the requirements of the bond. There is no suggestion, for example, that Gi Nam caused his son's failure to appear and thereby, by his own acts, triggered the judgment. Rather, the allegation is that as a result of his son's failure to appear—which is to say an act (if of omission) by the son—this debt accrued by the operation of the bail bond. We must therefore look to the nature of the obligations the bond *per se* created, which the law of the Commonwealth of Pennsylvania defines.

Pa. R.Crim. P. 4016 addresses "Procedures upon violation of conditions [of bail]: revocation of release and forfeiture; bail pieces; exoneration of surety." Under subparagraph (A)(2)(a), entitled "Sanctions", the Rule states that, "When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited[20] and shall state in writing or on the record the reasons for so doing," Pa. R.Crim. P. 4016(A). Correspondingly, the Philadelphia County Court of Common Pleas, Criminal Division, Rule 510, entitled "Bench Warrant—Bail Forfeiture" states in paragraph (A) that "THE SURETY IS UNDER OBLIGATION TO PRODUCE THE DEFENDANT FOR ALL REQUIRED COURT APPEARANCES UNDER PENALTY OF FORFEITURE OF

---

find this convincing. Even taking the text at face value, we are left with the fact that the statute does not list only "penalties" but also "fines" and "forfeitures" and therefore the Senate Report does not foreclose an interpretation which finds the statute applicable to the bail bond debt on the basis of the provision's inclusion of "forfeiture".

The Debtor also seeks to make use of the legislative history of § 726(a)(4) of the Bankruptcy Code, which deals with the priorities for distribution of the estate's assets, and which also employs the "fine, penalty, or forfeiture" diction. Debtor notes that the legislative history for this section refers to "punitive penalties", S.Rep. No. 95–989 at 97, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5883. On the proposition that the same words used in different parts of an act should be given the same meaning, Debtor again argues that the "fine, penalty, or forfeiture" in § 523(a)(7) must therefore refer only to a "punitive penalty" because

§ 426(a)(4)'s legislative history gave that meaning to the same string of terms used in that section.

We cannot accept this use of § 426(a)(4)'s legislative history. First, as the City notes, § 726(a)(4) applies to any "fine, penalty, or forfeiture" but does not specify that they be payable to the government, and therefore it is unclear that this section refers to the same subject matter addressed in § 523(a)(7). Even if it did, the mere use of the words "punitive penalty" in the legislative history does not foreclose any application of this provision to a bail bond surety debt where the Congress used words other than "penalty" to characterize the debts involved. We consequently do not find the legislative history the Debtor cites to be convincing evidence of the proper interpretation of § 523(a)(7).

**20.** As we noted above, the mere use of cognates of the word *forfeiture* does not of course place the debt within § 523(a)(7).

HIS BAIL BOND. NO OTHER NOTICE TO THE SURETY SHALL BE REQUIRED." However, that same rule states that "[i]t shall be the responsibility of the defendant to appear for any scheduled Court action." Philadelphia Cty. C.C.P.Crim. Div. R. 510(A).

These provisions do not show that Gi Nam's bail bond surety debt is a penal sanction resulting from his own wrongdoing under § 523(a)(7).[21] It is abundantly clear from the express language of the bond and from the texts of the rules quoted above that in a case where a bail bond is forfeited because the defendant fails to appear, the wrongdoing is on the part of the missing defendant, not on the part of his surety. The conditions of the bond, in particular, repeatedly outline what it is that the defendant must do, and Pa. R.Crim. P. 4016 states that the bond may be forfeited as a result of the defendant's actions in violation of the conditions of the bond. We can only see two duties of action that the bond might impose for the surety. The first is the bond's requirement that both the defendant and the surety have the obligation to inform the issuing authority of any address change, and the second is the surety's obligation, pursuant to Local Rule 510, to produce the defendant for court appearances.

With respect to this second duty, we find it significant that the surety's obligation to produce the defendant is nowhere explicitly stated in the bond itself;[22] instead, as noted above, the bond itself lists, almost exclusively, duties of the defendant. Moreover, absent some affirmative role by the surety in the defendant's failure to

---

21. We note here that the Debtor cites to several Pennsylvania cases in an effort to show that Pennsylvania bail bond surety debts are civil, and not penal, in nature. We do not find that this case law would necessarily support this position. In *Ruckinger v. Weicht,* 356 Pa.Super. 455, 514 A.2d 948 (1986), the panel held impermissible a county's local rule that a surety's bail money was to be used to pay costs, fines, or restitution levied in the defendant's case. The Debtor argues that·this decision highlights the distinction between bail money, on the one hand, and penal sanctions, on the other. While this is true as far as it goes, it is crucial to recognize that *Ruckinger* considered circumstances where the *surety*'s bail money would be used to pay the *defendant*'s sanctions, and therefore the holding does not tell us whether the surety's debt on a forfeiture of bail is itself penal. Significantly, *Ruckinger* based its decision partly on the idea that bail was intended to ensure the presence of the defendant, not to guarantee the payment of monetary punishments, *see Ruckinger,* 514 A.2d at 949. Again, this does not touch on our situation here, where the forfeited bail money was only used in an effort to secure David Nam's presence.

The Debtor also cites to several Pennsylvania cases that held a bail agreement to be a contract that is properly interpreted using rules of construction applicable to contracts generally, *see, e.g., In re Marshall's Estate,* 416 Pa. 64, 204 A.2d 243, 245 (1964). Again, we cannot find that this holding determines the outcome here. Simply because the bond is viewed as a contract, and must be interpreted commensurately, does not mean necessarily that the forfeiture of the full amount of the bond based on the defendant's non-appearance cannot be considered a penal sanction under § 523(a)(7). For example, as discussed in the text above, courts have construed § 523(a)(7) to render nondischargeable a debt resulting from the failure to abide by a stipulation that settled environmental charges against the debtor, though it would seem quite likely that such a stipulation would also be subject to rules of construction pertinent to civil documents. Thus, the mere fact that the bail agreement might be a "civil" document in some sense does not show that any debt arising from that document will not come under § 523(a)(7).

To the extent that the Debtor cites to these cases in support of his argument that Gi Nam's debt is not the same as a penalty assessed against his son in the underlying criminal case, we agree that this is a fundamental difference. Even so, the question remains whether Gi Nam's bail bond surety debt arose as a penal sanction for his own wrongdoing associated with his son's failure to appear, independent of an adjudication of the charges against his son *per se.*

22. At least, we are unable to locate any such statement in the copy of the bond that the City has provided with its pleadings, though owing evidently to repeated faxings and photocopyings of the exhibit, several of the sentences in our copy of the bond are completely illegible.

appear,[23] a surety's "violation" of the requirement that he ensure the defendant's presence cannot reasonably be said to constitute "wrongdoing" for the purposes of placing the resultant bond debt within § 523(a)(7).

The reasoning is similar for the surety's obligation to disclose the defendant's change of address. Unless the surety's failure to disclose such a change was associated with an active effort to hide the defendant's location, such an action is not "wrongdoing" sufficient to turn the bail forfeiture into a "penal sanction". Also, we note here that giving notice of a change of address presupposes that the defendant both had a new address and that the surety was aware of it, neither of which were in any way alleged in the Complaint.

We therefore conclude that Gi Nam's liability to the Commonwealth arising from the bail bond was not a penal sanction arising from his own wrongdoing. The wrongdoing here was only the son's, who failed to meet his obligation to appear.[24]

### C. Application of § 523(a)(7) to Gi Nam's Debt

We have above concluded that § 523(a)(7) excepts from discharge in Chapter 7 bankruptcy only a "fine, penalty, or forfeiture" that is a penal sanction

arising from the debtor's wrongdoing, and we have also concluded that Gi Nam's own debt resulting from the bail bond in this case was not such a penal sanction. Our holding therefore immediately follows: Gi Nam's debt to the Commonwealth does not come under the exception to dischargeability in § 523(a)(7) and therefore is dischargeable in his bankruptcy.

Having reached that decision, we now as a final matter address the argument, which the City forcefully forwards, that such an interpretation of the scope of § 523(a)(7) cannot stand in the face of powerful public policy to the contrary. Interpreting § 523(a)(7) in *Kelly v. Robinson*, the Supreme Court noted that the language of that provision must "reflect the ... deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings," *Kelly*, 479 U.S. at 47, 107 S.Ct. at 360, and that such statutory construction must be performed "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice system," *Kelly*, 479 U.S. at 43–44, 107 S.Ct. at 358.[25] Based on these policy concerns, the City argues with much force that *Kelly's* real import to this case is to show that the only significant inquiry in

**23.** As noted above, the City's Complaint contains no suggestion that Gi Nam had a role in his son's failure to appear, and therefore we do not face here the difficult question of whether such a role would constitute wrongdoing sufficient to place the forfeited bail within § 523(a)(7). We note from a later opinion of the Bankruptcy Court that Gi Nam and his wife ultimately invoked their Fifth Amendment rights in response to interrogatories from the Trustee that sought to examine the circumstances surrounding the bond and the judgment, *see In re Gi Yeong Nam*, 245 B.R. 216, 222 (Bankr.E.D.Pa.2000). From the discussion in this later opinion, it also appears that David Nam decamped for South Korea. These interesting and speculative facts are not before us and can in no way guide our decision here.

**24.** The City makes much of the fact that the judgment entered against Gi Nam was issued

by the Criminal Division of the Court of Common Pleas in the criminal action against David Nam. Although the judgment may be thus styled a "criminal judgment" since it emanated from the criminal division, we find that such a label by itself cannot determine our course here, as we must look to substance and not to form.

**25.** *Kelly* noted that this concern was reflected in the pre-Code judicial practices by which courts found that judgments of state criminal courts were not discharged in bankruptcy despite that the strict application of the letter of the Act of 1898 would have discharged them, *see Kelly*, 479 U.S. at 44–48, 107 S.Ct. at 358–60. The Court noted that "[c]ourts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments," *Kelly*, 479 U.S. at 44, 107 S.Ct. at 358.

determining whether a debt falls under § 523(a)(7) is whether allowing discharge of that debt would interfere with a state criminal prosecution,[26] and that a holding such as ours here constitutes just such an interference.

We will begin with an outline of the concern that the City identifies. The City contends that the purpose of bail is to ensure the defendant's presence at trial, and that where the surety on the bond is a family member the defendant's incentive to appear is linked to the financial harm that will accrue to the surety if the bond is forfeited. Similarly, when a family member is a surety, the financial harm resulting from the forfeiture of the bond is the surety's incentive not to assist the defendant in fleeing the jurisdiction.

Were we to allow a family member surety's bail bond debt to be discharged in bankruptcy, the City argues, we would effectively eliminate these financial incentives on the defendant and the surety and will irreparably harm the bail system. If the defendant and the surety know that the liability for the bond will be erased if the surety enters bankruptcy, the City contends that there is much less reason for the defendant to appear, since his family member surety will be able to deflect the financial harm of forfeiture, and on the same logic there will be much less reason for the family member surety to refrain from assisting the defendant's flight. Thus, so the City's argument goes, an interpretation of § 523(a)(7) that frees family member bail bond sureties from their bond obligations after a petition for bankruptcy would impede the states' ability successfully to prosecute criminal offenders, and would require states to deploy additional scarce law enforcement resources to finding and capturing fugitives. Moreover, the City argues, this eventuality would redound to the disadvantage of defendants, because states would, in this regime, become less willing to grant bail in the first place. With particular reference to this case, the City notes that if Gi Nam is permitted to discharge his debt to the Commonwealth, David Nam will have little incentive to return to the jurisdiction to face the grave charges against him, while such an incentive will remain if Gi Nam is still subject to the debt.[27]

---

26. We note that the City's position on statutory interpretation is somewhat inconsistent here. As it began its interpretation of § 523(a)(7), *Kelly* noted that "the starting point in every case involving construction of a statute is the language itself.... But the text is only the starting point.... In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy," *Kelly*, 479 U.S. at 43, 107 S.Ct. at 357–58 (citations omitted). Here, the City wants us, on the one hand, to go no farther than the words of the statute and hold that because the bail bond debt is a "forfeiture" pursuant to the Pennsylvania Rules, it must fall under § 523(a)(7), while also arguing, on the other hand, that in our holding must be guided by the policies allegedly undergirding the statute. In any event, we have above rejected the proposition that the use of "forfeiture" in the statute compels a result here, and we discuss below the City's policy concerns.

27. As the above discussion suggests, the City notes that these policy arguments do not apply equally to debtors who are professional bail bondsmen. Because bail bondsmen have no relationship with the defendants, they have no incentive whatever to aid the defendant's flight, and every incentive to capture a fugitive defendant in order to recoup the value of the bond. Moreover, a bail bondsman who faced regulatory examination has a disincentive to declare bankruptcy and may in any event be less prone to doing so because a bondsman can account for the probability of forfeiture in the premium he charges.

Having noted this difference in incentives, the City then notes that most of the cases discussed above holding that the bail bond debts are dischargeable, notably including the Fourth Circuit's decision in *In re Collins*, involved professional bail bondsmen rather than family member sureties. Thus, the City contends, those cases are in fact inapposite to our situation here because the policy concerns arising from allowing a bail bondsman to discharge his bond debts are so much less salient than those at issue here with a family member surety. The City argues that in our circumstances the policy concerns loom much

As an initial matter, we acknowledge, as did Judge Sigmund in her opinion, that these concerns have much merit, and we cannot fault the logic in the City's incentive analysis. We cannot, however, let these policy concerns determine the outcome here.

First, and most significantly, we do not think that the interpretive concerns expressed in *Kelly* go to the issue in this case. It is certainly true that *Kelly* repeatedly mentions the importance of not interfering with state criminal prosecutions, but in assessing the significance of these pronouncements we must look to the context in which they were made. In *Kelly* the Court examined whether a payment of "restitution" made as a condition of probation by a woman convicted of the wrongful receipt of welfare benefits fell under the exception to dischargeability of § 523(a)(7). The Supreme Court therefore had to consider whether such a payment, whose designation as "restitution" seemed to put it outside of the plain language of § 523(a)(7), was in fact properly construed to be within that provision, and in analyzing this question the Court focused on the fact that the "restitution" was part of a criminal judgment against the woman and thus furthered the state's interests in rehabilitation and punishment, *see Kelly*, 479 U.S. at 53, 107 S.Ct. at 362. In light of

this analytic process, it is not surprising that the Supreme Court stressed the need to avoid interfering with state criminal proceedings.

More than this, however, the language that *Kelly* used suggests that the Supreme Court was particularly concerned with interfering with a state's punishment of a convict, *see Kelly*, 479 U.S. at 44, 107 S.Ct. at 358 ("Courts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judgments."), *id.*, 479 U.S. at 47, 107 S.Ct. at 360 ("federal bankruptcy courts should not invalidate the results of state criminal proceedings"). As discussed above in the margin, while Gi Nam's debt resulted from a judgment entered by the Criminal Division of the Court of Common Pleas, it was not in any meaningful sense of the word a "criminal judgment", and certainly did not result from any criminal conduct on Gi Nam's part.[28]

The policy concerns expressed in *Kelly* on their face go to federal interference with sentences states impose upon convicts, and there is nothing to suggest that the Supreme Court was mandating that construction of § 523(a)(7) must depend on whether the debt in question might in some fashion, however attenuated, affect the states' administration of criminal jus-

larger and compel a different result. In the immediate context, it is appropriate to note that bail bondsmen are prohibited from bonding defendants in Philadelphia County.

We again agree with the City's incentive analysis. It would seem apparent that the policy concerns implicated by the discharge in bankruptcy of bail bond debts are less severe when the debtor is a bail bondsman than when the debtor is a family member. However, this difference does not change our decision here.

For one thing, as discussed below in text, we do not find the policy concerns surrounding the family member sureties to be compelling. David Nam has, after all, cost his father at least the $100,000 premium as well as his future credit. Moreover, to the extent that we relied upon *In re Collins* in our interpretation of § 523(a)(7), we cannot see how its holding regarding the scope of the statute was really

affected by the fact that the debtor was a bail bondsman, although we recognize that the *Collins* court discussed that fact at length in addressing the policy concerns associated with its ruling. With respect to this, we note that it is rare indeed to interpret the same statute to mean two different things when applied to two different individuals, particularly when there is no hint in the language of the statute that Congress contemplated such a differentiation. As we will remark at the conclusion, to the extent that such differentiation would be a good thing, it is for Congress, and not us, to make it.

**28.** We note here again that the result here might be different if there were allegations that Gi Nam had aided his son's flight, but that is not this case.

tice.[29] We consequently find that the policy concerns identified in *Kelly* do not necessarily encompass whatever bad effects are inflicted upon the states' criminal justice system because bail bond surety debts are dischargeable in bankruptcy.

■ Second, even if the policy concerns in *Kelly* do encompass the harms caused by the discharge of bail bond surety debts, it is unclear why the presence of these concerns would compel a result contrary to that which we have reached here. For one thing, although *Kelly* directs us to interpret § 523(a)(7) in light of the concerns regarding the effect on the state criminal justice system, we equally cannot ignore the application of the canons of construction, discussed in our analysis above, which mandate that we look to the immediate context of the language at issue. We found that these interpretive tools compel us to conclude that Congress's use of "forfeiture" in § 523(a)(7) encompasses only those forfeitures that are penal sanctions, and there is nothing in *Kelly* to suggest that the law enforcement policy concerns trump these time-honored canons of statutory construction. That is, even to the extent that our holding here interferes in some way with state law enforcement, this is not a reason for us to find that the statute has a meaning other than what its language reflects.[30]

Third, the policy implication that the City identifies is at best difficult to quantify. Certainly, the City's incentive analysis works at the margin: if a private surety was strongly considering helping the defendant flee, the possibility that the debt could be discharged in bankruptcy might tilt the decisional balance and impel that surety to assist the defendant to skip bail. However, even given this marginal effect, the cumulative effect of the availability of discharge remains an imponderable, in part because there remain countervailing incentives to the surety and the defendant. For one thing, irrespective of our decision here, sureties lose the money they pay up front on the bond when the defendant fails to appear. In this case, Gi Nam has lost the $100,000 (or ten percent of the total bond value) that he paid at the execution of the bond, hardly a paltry sum. Moreover, entering bankruptcy is itself a far from costless event, with grave implications for the debtor's credit. While these costs do not eradicate the concerns created by discharging bail bond surety debts, their existence shows that the balancing of competing interests and policies here presents a difficult calculus for any court to perform with any hope of precision.

In the end, we agree with Judge Sigmund and find that to the extent that these policy concerns should come to a different balance, it is for Congress, and not this Court, to address them by amending the statute.

### III. *Conclusion*

We hold that 11 U.S.C. § 523(a)(7) excepts from discharge in Chapter 7 fines, penalties, and forfeitures that are penal sanctions resulting from the debtor's wrongdoing. Thus, Debtor Gi Nam's debt to the Commonwealth of Pennsylvania resulting from the forfeiture on his son's bail bond does not meet this requirement and is thus dischargeable. We will therefore affirm the Bankruptcy Court's dismissal of the City of Philadelphia's Complaint in Adversary No. 99–815 pursuant to Fed. R.Civ.P. 12(b)(6).

**29.** We recognize that *Kelly* did broadly state that the interpretation of § 523(a)(7) must proceed "in light of the interests of the States in unfettered administration of their criminal justice systems," *Kelly,* 479 U.S. at 44, 107 S.Ct. at 358, but we find that the scope of this sweeping pronouncement is limited by the more specific remarks quoted in the text.

**30.** We also observe that the concern for the state criminal justice systems is not the only policy concern at play here. We have mentioned above that the central goal of the bankruptcy system is to permit "honest but unfortunate" debtors an opportunity for a fresh start, and our decision must reflect this goal as well.